TINKER INVESTMENT & MORTGAGE CORPORATION, Plaintiff–Appellant,

v.

CITY OF MIDWEST CITY, Defendant–Appellee.

WILLOW WIND, INC., Plaintiff–Appellee,

v.

TINKER INVESTMENT & MORTGAGE CORPORATION, Defendant–Appellant,

City of Midwest City, Defendant–Appellee.

Nos. 78844, 80396.

Supreme Court of Oklahoma.

April 19, 1994.

---

Robert N. Sheets, Phillips McFall McCaffrey McVay & Murrah, Oklahoma City, for appellant Tinker Inv. & Mortg. Corp.

David A. Davis, Oklahoma City, for appellee City of Midwest City.

Byrne A. Bowman, Oklahoma City, for appellee Willow Wind, Inc.

OPALA, Justice.

The case presents the following questions: (1) Should Tinker Investment & Mortgage Corporation's [Timcorp] appeal in Cause No. 78,844 be dismissed because it is prosecuted from an *unappealable* summary judgment? (2) Can Timcorp secure in its *second* appeal [Cause No. 80,396] the relief sought by its *first* appeal [Cause No. 78,844] against Midwest City [the City], even though its attempt to secure this relief *comes here more than 30 days after the date of the judgment from which the second appeal is prosecuted?* and (3) Did the district court err in rejecting Timcorp's objection to Willow Wind/Beaver's [1] suit, based on the latter party's failure

---

1. We refer to Willow Wind, Inc., and Willow Wind, Inc. and Beaver Investment Co., Joint Venturers, as Willow Wind/Beaver.

to exhaust the City's administrative remedies? We answer the *first* question in the affirmative and the *second two* in the negative. Timcorp's quest for corrective relief from the trial court's summary judgment to the City is dismissed. Timcorp's attempt to transform a *nominal party* [Midwest City] into a *targeted party appellee* [2] in its second appeal offends the provisions of 12 O.S.1991 § 990A. Timcorp's quest to enlarge its assignment of errors in the second appeal is unauthorized by Rule 1.17, Rules of Appellate Procedure in Civil Cases. Although allowing amendment of the petition in error *before* the brief in chief is filed, the cited rule does not sanction the *substitution or addition* of parties appellee or appellant *more* than *thirty days after the date of the judgment from which the appeal is prosecuted.* [3] Because the City's administrative procedure for enforcement of its municipal ordinances was concededly ineffective, the trial court correctly ruled that the exhaustion-of-remedy doctrine did not bar it from reaching the claims of Willow Wind/Beaver or from construing the *pay-back* ordinances.

**I**

**ANATOMY OF LITIGATION**

The City's ordinances required subdivision developers to install water and sewer lines and to dedicate them to the City as a condition for municipal plat approval.[4] In 1982 new ordinances [5] were passed to encourage

---

**2.** *Targeted party appellee* is one against whom the appellant seeks corrective relief in its assignment of errors.

**3.** *See Ogle, infra* note 25 at 799.

**4.** *Mid–Continent Builders v. Midwest City*, Okl., 539 P.2d 1377, 1379 (1975).

**5.** Ordinance Nos. 1818, 1819 and 1820 are called *"pay-back ordinances"*. Their pertinent parts are:

Ordinance No. 1818:
  Sec. 37–189. Method of Financing Facilities.
  *Service Lines*—The cost of service lines shall be paid for by the developer and/or owner.
  *Lateral Lines*—The cost of lateral lines shall be paid for by the developer and/or owner.
  *Trunk Lines*—The cost of extending existing trunk lines or construction of new trunk lines shall be borne by the developers and/or owners. The cost shall be apportioned on the basis of an equal payment per acre and per lot considering the total area served by the trunk line system. The cost for trunk lines shall` be determined when the necessity arises for sewering pre-determined drainage areas. When the required expenditure is in excess of the amount which the developer and/or owner is obligated to pay for such sewer service on a per acre and per lot basis, the City agrees to refund to the developer and/or owner the excess cost as funds become available from assessments from other tracts in the area. The developer and/or owner shall be given credit against acreage and lot assessments for all sewer lines relating to his development which are considered trunk lines. If any lateral sewer connection is made to a trunk line, the developer shall pay a trunk line cost for such lots. Said payments will go into a special fund for trunk line sewer improvements only. Said payments to be made to the City upon application for connection to existing City sewer lines.

The unit costs are to be adjusted yearly on the basis as set out in this ordinance.
  Sec. 37–193. Administration.
  a. The City Manager shall designate the appropriate administrator of this program.
  b. The City of Midwest City shall reimburse the developer the assessments collected from subsequent developers benefiting from said facilities for a period of fifteen (15) years or until the developer has been reimbursed 90% of his cost, whichever shall sooner occur [sic].
  c. The City shall withhold an administrative fee of 10% to be debited from the account balance of each yearly payback date.
  d. An accounting of the money collected as grid fees shall be kept by the appropriate financial officer of the City. A Board of Review shall be appointed by the Mayor and approved by the City Council to review and approve the procedure used in the administration of the grid funds and to settle any disputes or misunderstandings that might arise. The designated administrator of this program shall be the chairman of the Board of Review. One member shall be appointed from each of the following groups:
    1. A representative of the building/developing industry.
    2. A representative of the banking/financial field.
  Each member shall have a designated alternate that is prepared to act on the Board in event the member is absent or is disqualified because of a direct interest in the matter under consideration. All decisions shall be subject to the final determination of the City Council.
Ordinance No. 1820.
  Sec. 37–84. Developer's Responsibilities.
Developers and large tract users shall install distribution lines at their own expense. Any grid or distribution line installed under the provisions of this ordinance shall be subject to approval, inspection and final acceptance by the City of Midwest City. When a developer and/or owner

private parties to build *trunk sewer lines* to service previously undeveloped lands. This local legislation, commonly referred to as *pay-back ordinances,* called for (1) a developer to pay the initial construction costs for the *trunk sewer lines* and (2) the City to charge *later developers* a one-time fee to connect their subdivisions to these lines. *Ninety* percent of the collected "tie-on" fee was to be paid to the developer who had constructed the original trunk line and *ten* percent was to be retained by the City to cover the costs of administering the *pay-back plan.* The pay-back period was limited to "no more than fifteen years".

The City's efforts to enforce the ordinances were not fully effective. *Willow Wind/Beaver,* a developer who had installed a sanitary sewer *trunk line, sued* for a declaration of its rights under the ordinances and, alternatively, for a writ of mandamus to compel their enforcement. Shortly after this suit was filed in 1986, the City repealed the *pay-back* ordinances,[6] deeming them unconstitutional.

Another developer, Timcorp, brought a *separate* action against the City to compel enforcement of the *pay-back* ordinances. Its claim was rested upon theories of *inverse condemnation* and *unjust enrichment.* Timcorp sought a declaration that a line it had built was a *trunk line* within the meaning of the ordinances and that reimbursement from the City for the line's construction costs was hence its due. According to Timcorp, had it not been for the pay-back ordinances, it would *not* have planned a subdivision which called for water and sewer connections. Rather, it would have opted for a development in which septic tanks and water wells would have been used.

*The two cases were consolidated below for disposition.* The trial judge *initially* ruled the pay-back ordinances unconstitutional and gave summary judgment to the City.[7] The Court of Appeals reversed that decision.[8] This court vacated the appellate court's opinion and reached for resolution, *inter alia,* the question whether the *pay-back* ordinances were valid when tested against the provisions of Art. 10, §§ 14, 17, 26 and 27, Okl. Const.[9] Pronouncing the ordinances *constitutional,* this court reversed and remanded the case for trial. Following the remand, summary judgment went to the City *against* Timcorp.[10] When giving summary judgment to

---

requires water service to a tract not adjacent to a portion of the grid system, which has already been installed, it shall be the responsibility of the developer and/or owner to extend the grid system to his tract. Such extension shall be under the control of the City of Midwest City. The developer and/or owner shall be given credit against acreage and lot assessments for all water lines relating to his development which are considered grid or supply lines.
Sec 37–86. Payment When Area Revised.
All grid and distribution lines shall meet the established engineering requirements of the City of Midwest City.
Sec 37–89. Administration.
a. The City Manager shall designate the appropriate administrator of this program.
b. The City of Midwest City shall reimburse the developer the assessments collected from subsequent developers benefiting from said facilities for a period of fifteen (15) years or until the developer has been reimbursed 90% of his cost, whichever shall sooner occur [sic].
c. The City shall withhold an administrative fee of 10% to be debited from the account balance of each yearly payback period.

6. Repeal was effected by Ordinance No. 2155, passed September 9, 1986.

7. The trial judge gave summary judgment to the City on May 8, 1987.

8. Willow Wind, Inc. and Willow Wind, Inc. and Beaver Investment Co., Appellants; Tinker Investment & Mortgage Company, Cross Appellant v. City of Midwest City, Appellee/Cross Appellee, Case No. 68,805 (consolidated with Cause No. 68,304) (unpublished opinion of the Oklahoma Court of Appeals, Nov. 22, 1988).

9. *Willow Wind Inc. v. City of Midwest City,* Okl., 790 P.2d 1067, 1069 (1989).

10. The trial judge's December 5, 1991 summary judgment provided in pertinent part:
"1. Plaintiffs have dedicated ... water and sewer lines to the defendant City of Midwest City.
2. Plaintiffs are *not* entitled to collect damages for unjust enrichment or inverse condemnation for ... water and sewer lines which plaintiffs dedicated to the City of Midwest City.
3. Plaintiffs are only entitled to receive ninety percent of funds collected by the City of Midwest City as a result of tie-on fees for said water and sewer lines and no money has been collected thus far.
4. Defendant's Motion for Partial Summary Judgment is sustained.

the City, the trial court denied Timcorp's motion for summary resolution of other issues, noting the presence of unresolved claims. Timcorp appealed for review of the summary judgment [the first appeal].[11] The remaining issues were later reached for trial, and judgment [the latter resolving *all* the issues and claims in the consolidated action] was entered for Willow Wind/Beaver.[12] Timcorp appealed [13] this terminal disposition by judgment on the October 9, 1992 [the second appeal] and amended its petition in error on November 12, 1992.[14]

We hold today that (1) Timcorp's *first* appeal [Cause No. 78,844] is dismissible because it seeks review of an *unappealable summary judgment;* (2) Timcorp's quest for relief against Isaacs Construction Co., Inc. [Isaacs] is denied because Timcorp failed to serve Isaacs or its counsel of record either with a copy of the petition in error or with any other notice; (3) the terms of 12 O.S. 1991 § 990A [15] and Rule 1.17,[16] Rules of Appellate Procedure in Civil Cases, prohibit this court from granting Timcorp leave to change, *after the maximum time for the second ap-*

*peal has expired,* the City's status in the later appeal from that of a *nominal party appellee* [against whom *no* relief was sought] to that of a *targeted party appellee;* and (4) because the administrative remedy made available by the municipal law does not afford Willow Wind/Beaver adequate relief, the *exhaustion-of-remedies doctrine* did not require this action's abatement by the district court.

## II

### THE PROVISIONS OF 12 O.S.1991 § 1006 REQUIRE TIMCORP'S FIRST APPEAL TO BE DISMISSED BECAUSE IT IS PROSECUTED FROM AN UNAPPEALABLE SUMMARY JUDGMENT.

■ Although the district court gave to the City summary judgment against Timcorp, that *nisi prius* disposition did not *then* rise to an *appealable event.* This is so because the decision which Timcorp tendered for review [in its *first* appeal] was not *advanced* [17] for an immediate appeal under the

---

5. Plaintiffs' Motion for Partial Summary Judgment is overruled as fact issues remain. IT IS THEREFORE ORDERED by the Court that defendant City of Midwest City's Motion for Summary Judgment is sustained and plaintiffs' claims for damages for unjust enrichment and inverse condemnation are dismissed with prejudice.
IT IS FURTHER ORDERED by the Court that plaintiffs' Motion for Partial Summary Judgment is overruled.
     * * * "

11. Cause No. 78,844 [Timcorp's first appeal] was filed on December 31, 1991.

12. The trial court found that (a) Timcorp's line was tied onto Willow Wind/Beaver's line—a *trunk line* within the meaning of the ordinances—and was assessable under the *pay-back* provisions and (b) Isaac was not obligated to pay an assessment to Timcorp as Timcorp's water line was not enrolled in the pay-back ordinances at the time the connection was made to it. The City was ordered to collect the assessments due and remit 90% of the receipts to Willow Wind/Beaver.

13. In the second appeal [Cause No. 80,396] relief was sought from the trial court's findings for Willow Wind/Beaver and Isaacs. The earlier summary judgment to the City went unchallenged by Timcorp's petition in error in its second appeal and in its November 12, 1992 amend-

ment. It was not until July 14, 1993—*over eight months after judgment was entered below*—that Timcorp sought to amend its second petition in error to include the assignment of errors made against the City earlier in Cause No. 78,844.

14. Patmon v. Block, Okl., 851 P.2d 539, 542–43 (1993), holds that the appellate procedure in effect when the appealable event takes place governs the appeal. For this appeal the terms of 12 O.S.1991 § 1006, eff. June 1, 1991, are the controlling law; that regime was in effect when the earlier summary adjudication and the later judgment [tendered for review by the second appeal] were entered.

15. For the pertinent terms of 12 O.S.1991 § 990A see *infra* note 23.

16. The pertinent part of Rule 1.17, Rules of App. Proc. in Civil Cases, is:

"(a) Time, Extent, and Form of Amendment. The petition in error may be amended at any time before [sic] brief in chief is filed, or thereafter by leave of court to include any error or any issue presented to and resolved by the trial court which is supported by the record...."

17. *See Sears, Roebuck, and Co. v. Mackey,* 351 U.S. 427, 431–432, 76 S.Ct. 895, 897, 100 L.Ed. 1297 (1956). In *Mackey,* where the Court dis-

terms of 12 O.S.1991 § 1006.[18] In a multi-party, multi-claim action a decision disposing of *less than all the parties and all the claims* is *unappealable* unless the § 1006 criteria[19] are met. The provisions of § 1006 [then in effect] required that a *final decision* on *one but not on all claims* can be advanced by the trial judge for immediate appeal *only* by an *express determination*, included in the journal entry, that there is no reason for delay, coupled with an *express direction* for the filing of *"judgment"*. Here the requisite expressions are absent.

■ The law views the earlier summary judgment, here under scrutiny, as *unappealable sans certification.* That disposition was not terminal in this multi-party, multi-claims case.[20] It remained subject to change before the court's decision resolved *all* the other claims.[21] Because the summary judgment

cusses Fed.R.Civ P. 54(b), the prototype for our 12 O.S.1991 § 1006, it likens the district court's role under that rule to a "dispatcher" who must decide the appropriate time when "each 'final decision' upon one or more but less than all of the claims in a multiple claims action is ready for appeal." *Id.* at 435, 76 S.Ct. at 899. *See also, Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 42–44 (1st Cir.1988), for analysis of how Rule 54(b) is to be used to avoid piecemeal appeals in cases which should be reviewed only as a single judicial unit.

**18.** Willow Wind/Beaver's and Timcorp's separate actions in the district court were consolidated because they involved *interrelated claims* arising under *the same* municipal ordinances. The consolidation is supported by the rationale for the interrelated claims rule. Interrelated multiple claims cannot be *completely* resolved until *all* of the issues raised *in each* of them stand decided. *See Eason Oil Co. v. Howard Engineering,* Okl., 755 P.2d 669, 671–72 (1988); *Dennis v. Lathrop,* 204 Okl. 684, 233 P.2d 969, 970 (1951). *See also,* Rule 1.10(a)(13), Rules of App.Proc. in Civil Cases.

The pertinent terms of 12 O.S.1991 § 1006, eff. June 1, 1991, were:

*"When more than one claim for relief is presented in an action ... or when multiple parties are involved,* the court may direct the preparation and filing of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the filing of judgment. In the absence of such determination and direction, *any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties,* and the order or other form of decision is subject to revision at any time before judgment adjudicating all the claims and the rights and liabilities of all the parties is filed with the court clerk." [Emphasis added.]

By amendments enacted in 1993, Okl.Sess.Laws, 1993, Ch. 351, § 23, § 1006 was recodified as 12 O.S.1993 § 994. The *1993* version does not affect today's holding; it was not in force when these appeals were filed.

**19.** In multi-party, multi-claim litigation the terms of § 1006 afford the district court judge the discretion to direct the entry of judgment regarding one or more but fewer than all of the *claims* or *parties* and to *advance by certification* that judgment for appeal. For a clearer understanding of § 1006, federal *Rule 54(b)* jurisprudence is instructive, if not indeed binding, since § 1006 had its genesis in Fed.R.Civ.P. 54(b). Federal cases applying Rule 54(b) have held that in multi-claim, multi-party litigation, summary judgment on less than the entire litigation is unappealable *absent certification for appellate advancement.* Where under Rule 54(b) summary judgment is *unappealable,* it merges into the final judgment and becomes *open to review* upon appeal from the final decision. *Anderson v. Deere & Co.,* 852 F.2d 1244, 1246 (10th Cir.1988); *Monarch Asph. Sales Co. v. Wilshire Oil Co. of Texas,* 511 F.2d 1073, 1077 (10th Cir.1975); *St. Mary's Health Ctr. of Jefferson City v. Bowen,* 821 F.2d 493, 497 (8th Cir.1987); *Aaro v. Daewoo Intern. (America) Corp.,* 755 F.2d 1398, 1400 (11th Cir.1985). *See also,* C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3914.28 (1991).

**20.** The *nisi prius* decision from which Timcorp lodged its first appeal would have been *final* under the law existing *before the enactment of 12 O.S.1991 § 1006.* Compare *Dotson v. Rainbolt,* Okl., 835 P.2d 870 (1992), with *Eason, supra* note 18 at 672. *See also,* C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 2661 (1991). For a discussion of the distinction under Fed.R.Civ.P. 54(b) between (a) final decisions dispositive of an entire claim and (b) orders disposing only of some, but not all, issues within a claim, see *Tolson v. United States,* 732 F.2d 998, 1000–1001 (D.C.Cir.1984). *See also Spiegel, supra* note 17 at 42–44, 46.

**21.** *See* the last provision of § 1006, *supra* note 18.

*was not advanced in conformity to 12 O.S. 1991 § 1006,* Cause No. 78,844 stands dismissed.[22]

## III

## THE *TIMELY* COMMENCEMENT OF AN APPEAL INVESTS THE APPELLATE COURT WITH REVIEWING COGNIZANCE AND IDENTIFIES THE PARTIES APPELLANT AND APPELLEE.

▆▆ Appellate review is commenced by a petition in error filed within thirty days of the judgment or final order date.[23] Timely

commencement is jurisdictional.[24] Failure to file an appeal within the statutory time is fatal.[25] Timely filing serves the twofold purpose of apprising the appellate court and the parties appellant and appellee of the identity[26] and posture of the parties in the appeal as well as identifying the errors assigned for review. Rule 1.14,[27] Rules of Appellate Procedure in Civil Cases, mandates that the party appellant mail to each party to the appeal or to his counsel a copy of the petition in error.[28] The service of the petition in error is designed to ensure due process by affording timely notice to one who has been haled into court.[29]

---

**22.** Timcorp attempts to avoid the effect of § 1006 by urging that, before summary judgment to the City, it had sought a severance of the consolidated claims by a motion for separate trials. The record is crystal-clear that Case No. CJ–86–8259 was consolidated with Case No. CJ–86–9112 by an order of the trial court dated December 12, 1986. An order of the trial judge is essential to accomplish consolidation of actions. Cases thought to have been consolidated without an order are treated as several. *See State v. County Beverage License No. ABL–78–145,* Okl., 652 P.2d 292, 294–95 (1982). Both consolidation and severance can be accomplished *only* by court *order.* Here the record discloses *no order* severing the consolidated cases. The § 1006 criteria must hence be applied. Since the summary judgment came here without the trial judge's "advancement", it was an unappealable decision.

**23.** *See* 12 O.S.1991 § 990A, eff. June 1, 1991 [previously 12 O.S.1991 § 990]; Rule 1.14, Rules of App.Proc. in Civil Cases. The pertinent terms of 12 O.S.1991 § 990A are:

"A. An appeal to the Supreme Court may be commenced by filing a petition in error with the Clerk of the Supreme Court *within thirty (30) days from the date the final order or judgment is filed....*" [Emphasis added.]

**24.** *County Beverage, supra* at note 22 at 294–95; *Western Okl. Chapter, Etc. v. State, Etc.,* Okl., 616 P.2d 1143, 1147 (1980); *see also,* Rule 1.14(c), Rules of App.Proc. in Civil Cases, 12 O.S.1991, Ch. 251, App. 2.

**25.** *Bane v. Anderson, Bryant & Co.,* Okl., 786 P.2d 1230, 1233 (1989); *County Beverage, supra* note 22 at 294–295; *Western Okl. Chapter, supra* note 24 at 1147; *Ogle v. Ogle,* Okl., 517 P.2d 797, 799 (1973).

**26.** *Not later* than on the morning of the day following the expiration of the statutory time for appealing, the successful trial-court litigant (a) is entitled to be afforded the means of *ascertaining, from mere facial inspection of an adversary's peti-*

*tion in error,* those parties against whom the judgment remains subject to judicial review, and (b) must be afforded the opportunity to identify with accuracy, from the four corners of that single document, those litigants against whom the adjudicated obligation has become enforceable as final. *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 318, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988).

**27.** The pertinent terms of Rule 1.14 are:

"(b) **Filing and Mailing Copies of Petition in Error; Parties; Defects.** A copy of the petition in error shall be filed in the trial court and *mailed to each party to the appeal or to his counsel of record* within the same time. The mailing of a copy of the petition in error shall constitute notice of appeal, and no further notice of the appeal is required. *Parties served with process or entering a general appearance in the trial court constitute parties to the appeal.* [Emphasis added.]

**28.** A petition in error is Oklahoma's counterpart of a federal-court notice of appeal. The party-specification requirement in Rule 1.14, comparable to that found in FED.R.APP.P. 3(c), is *a jurisdictional prerequisite for appellate review.* The terms of FED.R.APP.P. 3(c) provide:

"(c) Content of the Notice of Appeal. The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken...."

Procedural requirements in FED.R.APP.P. 3(c) must be applied mechanically to avoid the uncertainties that arise when exceptions are created. *See Torres, supra* note 26, 487 U.S. at 318, 108 S.Ct. at 2409; *United States v. Indrelunas,* 411 U.S. 216, 222, 93 S.Ct. 1562, 1565, 36 L.Ed.2d 202 (1973).

**29.** *Due process* demands that the person targeted for relief be afforded a realistic opportunity to appear and defend. *First Nat'l Bank v. Oklahoma Sav. & Loan Bd.,* Okl., 569 P.2d 993, 996–97 (1977).

**A**

BECAUSE ISAACS HAD ENTERED ITS
APPEARANCE BELOW, IT WAS A
PARTY APPELLEE, EVEN
THOUGH IT WAS NOT NAMED IN
THE CAPTION OF THE PETITION
IN ERROR. NONETHELESS, FAIL-
URE TO SERVE ISAACS WITH A
COPY OF THE PETITION IN ER-
ROR OR WITH ANY OTHER NO-
TICE IS FATAL. IT PREVENTS
THIS COURT FROM GRANTING
ANY CORRECTIVE RELIEF
AGAINST ISAACS.

■ Rule 1.14 requires that, *within thirty days of judgment date,* an appellant mail a copy of the petition in error to *each party to the appeal.*[30] The record demonstrates that *neither Isaacs nor its counsel of record was ever mailed a copy of the petition in error, was provided with any other notice or that Isaacs voluntarily entered its appearance in this appeal.* Timcorp is attempting to secure relief against Isaacs by reversal of the latter's *nisi prius* victory.[31] Because Isaacs had entered its appearance below, it was a party appellee, even though it was not named in the caption of the petition in error.[32] Nonetheless, failure to serve Isaacs with a copy of the petition in error or

with any other notice is fatal. It prevents this court from granting any corrective relief against Isaacs.[33]

**B**

TIMCORP'S QUEST TO CONSOLIDATE
ITS APPEALS WOULD IMPERMIS-
SIBLY ADD A TARGETED PARTY
APPELLEE MORE THAN THIRTY
DAYS AFTER THE DATE OF THE
JUDGMENT FROM WHICH THE
SECOND APPEAL IS PROSECUT-
ED.

■ In its second appeal [Cause No. 80,-396] Timcorp seeks relief *only* from *Willow Wind/Beaver* and *Isaacs.* None of its timely assigned errors adversely affects the City nor does its petition in error seek any relief from this party. In short, the City's presence in the second appeal is only *nominal.*[34] Timcorp's quest to effect the desired transformation in the City's status from a *nominal party appellee* to a *party appellee from whom (monetary) relief is sought* is *untimely* because *it came here more than thirty days after the date of the judgment from which the second appeal is prosecuted.*[35] The amendment, if granted, would offend the provisions of 12 O.S.1991 § 990A by allowing a belated appeal against the City.[36]

**30.** Isaacs' appearance in Cause No. CJ–86–8259 was entered by its counsel on October 15, 1986. Although the transcript of trial [p. 6] reflects that the judge determined through conversation with counsel that Isaacs elected not to appear at the time of trial, Isaacs' counsel never withdrew of record. Isaacs was hence a *party to the appeal* within the meaning of Rule 1.14, Rules of App. Proc. in Civil Cases. For the pertinent terms of Rule 1.14 see *supra* note 27.

**31.** Timcorp's amended petition in error, Exhibit "C", ¶ 8 [Cause No. 80,396]; in its journal entry of judgment, dated November 6, 1992, the trial court found that Timcorp's water line was not enrolled under the *pay-back* ordinances at the time Isaacs connected to it; hence, Timcorp was not entitled to recover a *tie-on fee* from Isaacs.

**32.** The use of the phrase *"et al.",* meaning "and others", in the caption of the petition in error does not by itself afford notice to any party to the

appeal who is not *specifically* named in the caption or is not clearly identified in the body of the petition in error. *See County Beverage, supra* note 22 at 295; *Torres, supra* note 26 at 2409.

**33.** *County Beverage, supra* note 22 at 295; *Harden v. Board of Education,* 197 Okl. 598, 173 P.2d 429, 431–32 (1946); *Hazel v. Edwards,* 199 Okl. 169, 184 P.2d 981, 982 (1947).

**34.** Exhibit "C" to the petition in error (and its amendment) discloses that Timcorp's allegations of error sought reversal *only* of those parts of the final decision which award judgment to Willow Wind/Beaver and Isaacs.

**35.** *Ogle, supra* note 25 at 799; *Benson v. Blair,* Okl., 515 P.2d 1363, 1365 (1973).

**36.** For the pertinent terms of 12 O.S.1991 § 990A see *supra* note 23.

## IV

### BECAUSE THE ENFORCEMENT MECHANISM IN THE MUNICIPAL ORDINANCES WAS INEFFECTIVE, THE EXHAUSTION–OF–REMEDIES DOCTRINE WAS NOT INVOCABLE.

Exhaustion of available administrative remedies is a general prerequisite for an aggrieved party's resort to the courts.[37] A district-court action is not abatable *if the uninvoked administrative remedy was unavailable, ineffective or would have been futile to pursue.*[38] Timcorp urges that Willow Wind/Beaver should have first pursued its quest for relief from the Board of Review created by the City's *pay-back* ordinances.[39] *The administrative remedy available under the municipal law was conceded by all parties, including the City, to be ineffective.*[40] It would have been futile for Willow Wind to resort to a board which could not grant an effective remedy. There was hence no *fatal remedial impediment* to Willow Wind/Beaver's pursuit of its district-court action.[41]

## V

### AFTER FINDING THE ADMINISTRATIVE CONSTRUCTION OF THE ORDINANCES TO HAVE BEEN UNREASONABLE, THE TRIAL COURT CORRECTLY PROCEEDED TO CONSTRUE THE LANGUAGE OF THE PAY–BACK ORDINANCES.

The meaning of an ordinance, like that of a statute, is to be divined from the language found in its text.[42] The district court's primary task was to examine the language of the *pay-back* ordinances in order to determine if it was ambiguous, incomplete, or in need of clarification. If, as here, a controversy arises about the scope and meaning of an ordinance, the cardinal rule of construction is to give effect to *the legislative intent expressed in the text.*[43] The language of an ordinance, when given its *plain* and *ordinary* meaning, is the yardstick for ascertainment of the drafters' intent.[44] In interpreting local legislation, the views of the city council and city administrators, though contemporaneous with enactment of the ordinance, should not be used to *alter* the *clear meaning* of the act's language.[45] While construction of the ordinances by the department charged with their execution should be given weight *if the ordinances are unclear,*[46] it is the court's duty to test the administrative interpretation pressed upon it for adoption against the text to be construed.

The trial court was especially concerned with the meaning of language found in Sections 37–185 and 37–189.[47] The City's administrator of the *pay-back* program developed a policy that *only developers tieing onto a trunk line between the beginning and ending points of the line were assessable.* Parties tieing onto the *ends* of the line were not assessable. This policy was never re-

---

37. *Lincoln Income Life Insurance Co. v. Wood,* Okl., 556 P.2d 602, 604 (1976); *Hughes v. City of Woodward,* Okl., 457 P.2d 787, 789 (1969).

38. *Lone Star Helicopters, Inc. v. State,* Okl., 800 P.2d 235, 237–38 (1990).

39. *See supra* note 3, § 37–193(d) of Ordinance No. 1818.

40. Timcorp pled in its petition [¶¶ 6, 11, and 16], filed in CJ–86–9112, that the City "has wholly failed to comply with *the obligations of the pay-back system.*" In its answer to Willow Wind/Beaver's petition, filed in CJ–86–8259, the City stated that Ordinance No. 1818 was "unenforceable, and impossible of enforcement". Timcorp also acknowledged the ineffectiveness of the municipal review process when it did not avail itself of this process before filing its petition in CJ–86–9112. *See* Trial Transcript, pp. 58, 67.

41. *Lone Star, supra* note 38 at 237–38.

42. McQuillin Mun Corp §§ 20.42, 20.43; *Okl. Journal Pub. Co. v. City of Okl. City,* Okl., 620 P.2d 452, 454 (1979).

43. *See Journal Publishing, supra* note 42 at 454; *see also* McQuillin Mun Corp § 20.42 (3d Ed.).

44. *City of Bethany v. Hill,* Okl., 509 P.2d 1364, 1365 (1973); McQuillin, *supra* note 43 at § 20.-45.

45. *See Glens Falls Insurance Company v. City of Columbia,* 242 S.C. 237, 130 S.E.2d 573, 576 (1963); *Evans v. Roth,* 356 Mo. 237, 201 S.W.2d 357, 364 (1947).

46. *Elliot v. State,* 150 Okl. 275, 1 P.2d 370, 371 (1931).

47. The court was specifically concerned with interpreting language relating to the scope of the pay-back ordinance [§ 37–189]. This language provided "[t]hat the cost shall be apportioned on the basis of an equal payment per acre and per lot considering the *total area served by the trunk line system.*" [Emphasis added.] *See supra* note 5, § 37–189.

duced to a formal regulation, but it was used to administer the program. The City administrator's interpretation of these provisions did not pass muster. It was found so "simplistic, and just unreasonable" as to foist an "absurdity".[48] Finding that municipal enforcement was based upon an *unreasonable* administrative interpretation, the trial court proceeded to give meaning to the ordinances in light of their general purpose and objective.[49] This approach culminated in the conclusions that (1) Timcorp, along with other defendants [not parties to this appeal], used [or was served by] the Willow Wind/Beaver *trunk line* to dispose of sewage from their additions and (2) the City was required by its ordinances to assess Timcorp a *tie-on fee.* Since the trial court's construction and findings appear both reasonable and consistent with the textually demonstrable drafters' intent, the *nisi prius* judgment must be affirmed.

## VI

### SUMMARY

The summary judgment tendered for review in Timcorp's *first* appeal was unappealable *sans* certification. It is hence dismissed. Timcorp's failure *timely* to serve Isaacs with a copy of the petition in error or to otherwise give it notice of the *second* appeal is fatal to Timcorp's quest for corrective relief against Isaacs. To permit Timcorp to reassert, in its second appeal, the errors assigned in the dismissed first appeal would offend § 990A. After the passage of more than 30 days after the date of the judgment from which the *second* appeal is prosecuted, Timcorp may not recast the City from a *nominal party appellee* to a *targeted party appellee* [against whom relief is sought]. Because the trial court correctly found that the available administrative remedies of the municipal law were ineffective, there was no remedial im-

pediment to the pursuit of a district-court action. The *nisi prius* construction of the municipal ordinances is consistent with their plain and ordinary meaning and with the intent demonstrated on the face of the texts.

**THE APPEAL IN CAUSE NO. 78,844 IS DISMISSED BECAUSE THAT APPEAL IS PROSECUTED FROM AN UNAPPEALABLE SUMMARY JUDGMENT; THE MOTION TO AMEND THE PETITION IN ERROR IN CAUSE NO. 80,396 IS DENIED; AND THE JUDGMENT OF THE TRIAL COURT IS AFFIRMED.**

LAVENDER, V.C.J., and SIMMS, HARGRAVE and ALMA WILSON, JJ., concur.

HODGES, C.J., and KAUGER and WATT, JJ., concur in part and dissent in part.

SUMMERS, J., dissents.

---

**48.** Before rejecting the interpretation of the City's administrator, the trial court did, as it should have done, inquire into the *reasonableness* of the City's administrative interpretation of its ordinance. *See McConnell v. Town Clerk of Tipton,* Okl., 704 P.2d 479, 482 (1985); *Utility Supply Co., Inc. v. City of Broken Arrow,* Okl., 539 P.2d 740, 742 (1975); *Glaser v. Tulsa Metropoli-*

*tan Area Planning Com'n,* Okl., 360 P.2d 247, 249 (1961).

**49.** *Seventeen Hundred Peoria, Inc. v. City of Tulsa,* Okl., 422 P.2d 840, 843–44 (1967); *Klein v. Muhlhausen,* 83 Okl. 21, 200 P. 436, 438 (1921).