2011 OK 86

**Beverly BOWEN, Plaintiff/Appellee,**

v.

**STATE of Oklahoma, ex rel. OKLAHOMA REAL ESTATE APPRAISER BOARD, Defendant/Appellant.**

**No. 108,037.**

Supreme Court of Oklahoma.

Oct. 25, 2011.

Rehearing Denied Jan. 23, 2012.

---

Daniel J. Gamino, Oklahoma City, Oklahoma, for Plaintiff/Appellee.

Stephen L. McCaleb, Oklahoma City, Oklahoma, for Defendant/Appellant.

KAUGER, J.:

¶1 We granted certiorari to address whether the appearance of impartiality/conflict of interest in disciplinary proceedings before the Oklahoma Real Estate Appraiser Board (the Board) requires invalidation of the proceedings. We hold that under the facts of this cause, it does.

## FACTS

¶2 In December of 2005, the appellee, Beverly Bowen, a real estate appraiser since 1991 (Bowen/appraiser), appraised a parcel of real property located in McCloud, Oklahoma, for her client, BancFirst (Bank). The property was lender-owned and Bowen estimated that it was worth $255,000.00. Approximately one year later, the lender-owner foreclosed the property. By July of 2007, after having sat vacant for 19 months, the property sold at a sheriff's sale for $204,000.00 which resulted in a loss to the private mortgage insurer (insurer).

¶3 The insurer filed a grievance against the appraiser in September of 2007, with the Oklahoma Real Estate Appraiser Board (Board), the state entity which licenses real estate appraisers, alleging possible appraisal

fraud. The insurer hired another local appraiser, JoElla Jones (Jones/review appraiser), to reappraise the property nineteen months after Bowen's initial appraisal. Apparently, the property remained unoccupied the entire time, and it may have been vandalized. Jones also reviewed Bowen's work. She valued the property at $197,000.00 or $58,000 below Bowen's appraisal.

¶ 4 While the dispute between the bank and the insurer regarding the property's value was ongoing, the bank discovered that Jones had a personal and direct history with Bowen.[1] The appraiser and review appraiser had known one another for more than 26 years. They were once next door neighbors before Jones married Bowen's ex-husband and became a stepmother to Bowen's small children.[2]

¶ 5 Apparently, all references to Bowen's name in her appraisal were blacked out so that the review appraiser would not know who performed the appraisal. However, both appraisers earned a large portion of their income from appraising properties located in the same small Oklahoma counties. Learning this information prompted the bank to write a letter to the insurer on August 17, 2007, notifying them of the unmistakable conflict of interest and alleging that if a mistake

in an appraisal occurred, it was made by the review appraiser.[3]

¶ 6 Soon thereafter, the Board brought disciplinary proceedings against Bowen alleging that she violated the standards of professional real estate appraisers.[4] The bank also notified the Board of the significant conflict of interest of the review appraiser.[5] Notwithstanding the conflict of interest, a probable cause committee (committee) of the Board held a hearing on November 13, 2008. The only witness called to testify was the review appraiser. The committee recommended suspension of the Bowen's license until she successfully completed five different appraisal courses covering 120 hours. Following completion of the suspension, the panel recommended that she be required to submit monthly logs for six months of all appraisal reports completed the preceding month to the Board and noted that sample work products might be required for their review.

¶ 7 The Board met on January 9, 2009, and adopted the committee's findings of fact and conclusions of law but modified the disciplinary recommendation to a $1,000.00 fine and a 30–day suspension. On January 14, 2009, the appraiser filed a petition for judicial review and stay of the Board's decision in the District Court of Lincoln County.[6]

1. In a letter dated August 17, 2007, which was attached as Exhibit B to the Plaintiff's Motion to Require Transcript filed April 7, 2009, the Bank wrote the insurer that:
    ... During our review of the documentation, we uncovered the fact that the original appraiser was previously married to the review appraiser's current spouse. We feel that it is unlikely that the review appraiser, during her research, did not discover the identity of the original appraiser. We also believe *that there is an unmistakable conflict of interest* that arises from this situation that could possibly influence the objectivity of the review appraiser.... (Emphasis in original)
    The letter also provides:
    ... Based upon the above factors, including the factual and subjective errors in the review appraisal, the sale price of the distressed property after foreclosure, and the unfortunate conflict of interest, *we believe that if a true material misrepresentation has occurred, it was made by the review appraiser* ... (Emphasis in original.)
    In an e-mail sent from the Bank to the Board on October 24, 2007, attached as Exhibit A to the Plaintiff's Motion to Require Transcript filed April 7, 2009, the Bank wrote:

    ... Additionally, in our opinion, there appears to be a significant conflict of interest in this case that likely should have warranted Mrs. Jones declining the review appraisal request from Genworth in the first place ...

2. The Plaintiff's Reply Brief filed May 28, 2009, reflects that the review appraiser testified on page 82, lines 12–24 that:

    A. When I marred her ex-husband, he had a three year old son and a one year old daughter that I was with for 26 years.
    Q. Do you maintain a relationship with them?
    A. Yes.

3. See note 1, supra.

4. The action was brought pursuant the Oklahoma Real Estate Appraiser Act, 59 O.S.2001 §§ 858–700 et seq.

5. See note 1, supra.

6. The petition for judicial review was brought pursuant to Administrative Procedures Act, 75 O.S.2001 §§ 250 *et seq.* Title 75 O.S.2001 § 318

¶ 8 A hearing was held in the trial court on July 1, 2009. After the hearing the trial court remanded the matter back to the Board for the committee to consider any bias and prejudice which might exist between the appraisers. On October 19, 2009, the Board reported to the trial court that it had referred the matter back to the committee, who unanimously agreed that its recommendations were unchanged. The committee acknowledged that it knew of the conflict of interest between the appraisers as early as November of 2007, as well as when the original probable cause hearing was held in November of 2008.

¶ 9 On January 6, 2010, the trial court held another hearing reversing the Board's discipline, finding that the appearance of impropriety based on the conflict of interest between the only witness review appraiser and the disciplined appraiser was so apparent on the face of the record that reversible legal error occurred. The Board appealed and the Court of Civil Appeals reversed the trial court. We granted certiorari on June 27, 2011.

¶ 10 **THE TOTALITY OF THE CIRCUM-STANCES CREATED AN APPEAR-ANCE OF IMPARTIALITY/CON-FLICT OF INTEREST SUCH THAT THE BOARD'S DISCIPLINARY PROCEEDING MUST BE NULLI-FIED AND INVALIDATED.**

¶ 11 The appraiser argues that because it is apparent on the face of the record that the review appraiser had substantial personal, professional, and economic conflicts of interests with the appraiser, the Board's discipline findings were tainted and must be reversed. The Board insists that no legal error occurred because the appraiser was given notice of the charges against her in advance and she had the opportunity, and exercised it, to present evidence and cross-examine the witness for purposes of impeachment through bias.

¶ 12 Judicial review of agency/board orders is commenced in two ways: 1) pursuant to the Administrative Procedures Act (Act) which provides for review of final agency orders; [7] or 2) circumvention of the

---

governs judicial review of administrative decisions.

7. 75 O.S.2001 § 318 provides in pertinent part:
A. 1. Any party aggrieved by a final agency order in an individual proceeding is entitled to certain, speedy, adequate and complete judicial review thereof pursuant to the provisions of this section and Sections 319, 320, 321, 322 and 323 of this title.
2. This section shall not prevent resort to other means of review, redress, relief or trial de novo, available because of constitutional provisions.
3. Neither a motion for new trial nor an application for rehearing shall be prerequisite to secure judicial review.
B. 1. The judicial review prescribed by this section for final agency orders, as to agencies whose final agency orders are made subject to review, under constitutional or statutory provisions, by appellate proceedings in the Supreme Court of Oklahoma, shall be afforded by such proceedings taken in accordance with the procedure and under the conditions otherwise provided by law, but subject to the applicable provisions of Sections 319 through 324 of this title, and the rules of the Supreme Court.
2. In all other instances, proceedings for review shall be instituted by filing a petition, in the district court of the county in which the party seeking review resides or at the option of such party where the property interest affected

is situated, within thirty (30) days after the appellant is notified of the final agency order as provided in Section 312 of this title.
This statute was amended effective November 1, 2011, however the pertinent portions remain substantially unchanged.
Title 75 O.S.2001 § 322 provides:
(1) In any proceeding for the review of an agency order, the Supreme Court or the district or superior court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:
(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or

statutory procedures only when there is a constitutional question, inadequate administrative relief, and threatened or impending irreparable injury.[8] Here, the appeal was properly brought under the Act, but the question posed by this appeal is the right of due process to an impartial and disinterested tribunal in a civil adjudicative process.[9]

¶ 13 The interest in a professional license is substantial. When it is necessary to procure a license in order to carry on a chosen profession or business, the power to revoke a license, once granted, and thus destroy in a measure the means of livelihood, is penal in nature and therefore should be strictly construed.[10] The loss of a professional license is more than a monetary loss; it is a loss of a person's livelihood and loss of a reputation.[11] Because the interest at stake in the loss of a license, and the potential damage to a professional reputation resulting from disciplinary

proceedings is so great, we require a clear-and-convincing-evidence standard of proof.[12]

■ ¶ 14 To resolve this cause, we need not reach the question of whether the Board met its necessary standard proof to discipline the appraiser. Rather, this cause concerns the much more fundamental question of whether the appraiser could receive a neutral, fair, and impartial hearing before the Board. The only person reviewing her, and testifying regarding her performance, was a competing license holder with a pecuniary interest in the outcome who is married to the disciplined appraiser's ex-husband.

■ ¶ 15 When an administrative board acts in an adjudicative capacity, it functions much like a court.[13] Consequently, such proceedings require a minimum standard of due process such as notice and an opportunity to be heard.[14] In *Wolfenbarger v. Hennessee,*

(f) arbitrary or capricious; or

(g) because findings of fact, upon issues essential to the decision were not made although requested.

(2) The reviewing court, also in the exercise of proper judicial discretion or authority, may remand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue.

(3) The reviewing court shall affirm the order and decision of the agency, if it is found to be valid and the proceedings are free from prejudicial error to the appellant.

8. *Johnson v. Board of Governors of Registered Dentists*, 1996 OK 41, ¶ 13, 913 P.2d 1339; *Tinker Investment & Mortgage Corp. v. City of Midwest City*, 1994 OK 41, ¶ 12, 873 P.2d 1029; *Martin v. Harrah Independent School District*, 1975 OK 154, ¶ 15, 543 P.2d 1370.

9. The United States Constitution, amend. 14, § 1 provides:

... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws....

The Okla. Const. art. 2, § 7 provides:

No person shall be deprived of life, liberty, or property without due process of law.

In *Johnson v. Board of Governors of Registered Dentists*, see note 8, supra at ¶ 14, the Court stated:

Due process "entitles a person to an impartial and disinterested tribunal in both civil and criminal" adjudicative proceedings. *Marshall*

*v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980); *Gibson v. Berryhill*, 411 U.S. 564, 578–79, 93 S.Ct. 1689, 1697–98, 36 L.Ed.2d 488 (1973). The lack of due process resulting from a biased tribunal cannot be corrected on appeal. *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 61, 93 S.Ct. 80, 83–84, 34 L.Ed.2d 267 (1972).

10. *Johnson v. Board of Governors of Registered Dentists*, see note 8, supra; *State ex rel. Oklahoma State Board of Embalmers and Funeral Directors v. Guardian Funeral Home*, 1967 OK 141, ¶ 0, 429 P.2d 732.

11. *Johnson v. Board of Governors of Registered Dentists*, see note 8 at ¶ 19, supra.

12. *Johnson v. Board of Governors of Registered Dentists*, see note 8 at ¶ 20, supra; *State ex rel. State Bd. of Official Shorthand Reporters v. Isbell*, 1990 OK 135, ¶ 3, 803 P.2d 1143; *State ex. Rel. Oklahoma Bar Association v. McMillian*, 1989 OK 16, ¶ 9, fn. 6, 770 P.2d 892.

13. *Harry R. Carlile Trust v. Cotton Petroleum*, 1986 OK 16, ¶ 10, 732 P.2d 438, *cert. denied*, 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 and 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 764 (1987).

14. U.S. Const. amend. 14, § 1, see note 9, supra; Okla. Const. art. 2, § 7, see note 9, supra. *DuLaney v. Oklahoma State Department of Health*, 1993 OK 113, ¶ 9, 868 P.2d 676; *Harry R. Carlile Trust v. Cotton Petroleum*, see note 13, supra; *Cate v. Archon Oil Co.*, 1985 OK 15, ¶ 7, 695 P.2d 1352.

1974 OK 38, ¶¶ 10–15, 520 P.2d 809, a case involving a city council's revocation of a pawnbroker's license, the Court explained that an administrative board acts in quasi-judicial capacities and must function like a court. We said:

> ... If it is necessary to procure a license in order to carry on a chosen profession or business, the power to revoke a license once granted is penal and should be strictly construed.....
>
> ... A city council exercises quasi-judicial powers when it acts as an administrative board authorized to revoke pawnbrokers licenses. However, it may not ignore due process nor act arbitrarily....
>
> ... The constitutional guaranty of due process of law applies to administrative as well as judicial proceedings where such proceedings are quasi-judicial in nature....The due process clauses of the State and Federal Constitutions afford protection against arbitrary and unreasonable administrative actions....
>
> ... Where the ordinance prescribes a particular method of procedure for the revocation of a license it must be followed. In the absence of such a provision, there must be substantial compliance with the fundamental rules of substantial justice and fair play....
>
> An administrative hearing, particularly where the proceedings are judicial or quasi-judicial, must be full, fair and adequate; ... (Citations omitted)

¶ 16 Independence and impartiality are required of the courts.[15] Although we have not addressed the precise circumstances presented here, we have previously examined a licensing board's responsibility to provide a licensee, not only with a neutral and impartial proceeding but also a proceeding which *appears* neutral and impartial.

¶ 17 In *Johnson v. Board of Governors of Registered Dentists*, 1996 OK 41, ¶ 22, 913 P.2d 1339, a dentist petitioned this Court for judicial review of the Board of Governors of Registered Dentists' disciplinary action against him. The dental board received complaints against the dentist and, after a preliminary investigation into the complaints, submitted the findings to a board member from the district in which the complaint arose. That member was another dentist who was a direct competitor in the same geographical area as the accused dentist. The board member investigated the allegations, made recommendations to the board, ruled on pre-hearing motions, and went so far as to make decisions which were strictly within the province of the board.

¶ 18 First, the Court noted substantial interest one has in a professional license, stating that:

> 1) the possible loss of a constitutionally protected property right, the loss of a livelihood, and the loss of a professional reputation are greater than monetary losses;
>
> 2) there is high risk when an agency seeks to revoke a professional license and revocation proceedings have the agency acting as investigator, prosecutor, and decision maker; and
>
> 3) the risk is increased where a competitor of the defendant serves as the investigator and makes prosecutorial recommendations to the Board.

¶ 19 Next, the Court examined the quasi-judicial nature of a disciplinary proceeding, noting that such a proceeding requires neutrality, impartiality, and the *appearance* of an unbiased, impartial adjudication. We said:

> ... This Court has consistently held and due process requires every litigant receive a decision that is the result of 'the cold neutrality of an impartial judge.' ... Likewise, the Oklahoma Statutes require an agency member to 'withdraw from any individual proceeding in which [the mem-

---

**15.** The Oklahoma Code of Judicial Conduct, 12 O.S. Supp.2010 Ch. 2, App. 4, Cannon 1 provides:

> A judge shall uphold and promote the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety.

The Oklahoma Code of Judicial Conduct, 12 O.S. Supp.2010 Ch. 2, App. 4, Cannon 2 provides:

> A Judge Shall Perform the Duties of Judicial Office Impartially, Competently, and Diligently.

ber] cannot accord a fair and impartial [913 P.2d at 1348] hearing or consideration'.... 'When circumstances and conditions surrounding litigation are of such a nature that they might cast doubt and question as to the impartiality of any judgment the trial judge may pronounce, said judge should certify his disqualification.' ... This is an objective standard and is not dependent on the judge's belief....This rule applies equally to administrative boards acting in an adjudicatory capacity as it does to judges....It is presumed someone who has a financial interest in the outcome of a decision, even a pretrial decision, cannot render a decision with 'the cold neutrality of an impartial judge.' (Citations omitted)

What *Johnson,* supra, illustrates is that: 1) the risk of error is increased when a board's decision is based solely on the review and testimony of a competitor of the person being disciplined; and 2) the appearance of impartiality is as important as an actual impartiality or a conflict of interest.

¶ 20 Here, unlike the board member in *Johnson,* the review appraiser was not a member of the Board, nor did she participate in the decision to discipline the appraiser. Nevertheless, she was: 1) the only witness upon which all of the evidence rested; 2) a competitor in the same geographic area as the appraiser; 3) likely to be economically impacted by the Board's decision regarding the appraiser; and 4) once the next door neighbor who married the man next door, who happened to be the appraiser's husband. Without doubt, these circumstances cast doubt as to the unbiased, unprejudiced, impartiality of not only the witness but also the entire proceeding.

¶ 21 We do not doubt that the review appraiser had good intentions and believed herself to be unbiased, unprejudiced and impartial, especially considering that the name of the appraiser was blacked out when she was reviewing the appraisal. Nevertheless, as we noted in *Johnson,* supra, the question is not whether one personally **believes** herself or himself to be unprejudiced, unbiased, and impartial, the question is whether the

circumstances are of such nature to cause doubt as to his or her partiality, bias, or prejudice.[16]

¶ 22 While the same strict requirements applicable to judges or administrative adjudicators may not apply to all witnesses in every administrative adjudication, serious due process concerns are implicated in this cause which could have easily been avoided by selecting a reviewer from a different region. We hold that under the *Johnson* standards, the totality of the circumstances gives an appearance of impropriety and conflict of interest in the Board's disciplinary proceedings. Accordingly, we affirm the trial court's nullification and reversal of those proceedings.

## CONCLUSION

¶ 23 Because our adversarial system of justice places a premium on the fairness of a judicial proceeding, or, as in this cause, a quasi-judicial procedure, regardless of whether the witness believed that she was impartial, it is the appearance of impartiality and actual conflict of interest that conflicts with the disciplined appraiser's minimum constitutional due process rights. Accordingly, we affirm the trial court's nullification and reversal of the disciplinary proceedings.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT AFFIRMED.**

TAYLOR, C.J., COLBERT, V.C.J., KAUGER, WINCHESTER, EDMONDSON, REIF, GURICH, JJ., concur.

WATT, J., dissents.

COMBS, J., not participating.

---

**16.** *Johnson v. Board of Governors of Registered* *Dentists,* see note 8, at ¶ 32, supra.