OSCN Found Document:MAXWELL v. SPRINT PCS

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 MAXWELL v. SPRINT PCS
2016 OK 41
Case Number: 113898
Decided: 04/12/2016
No. 113811; 113941; 114161 (Companion cases)
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 41, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

THERESA MAXWELL, Petitioner,
v.
SPRINT PCS, AMERICAN CASUALTY CO. OF READING PENNSYLVANIA, and THE WORKERS' COMPENSATION COMMISSION, Respondents,

and

DAMIEN LEQUINT SMITH, PETITIONER,
v.
BAZE CORP. INVESTMENTS, INC. and COMPSOURCE MUTUAL INS. CO., Respondents,

and

JERRY D. HOFFMAN, Petitioner,
v.
TULSA GAS TECHNOLOGIES, INC., and COMMERCE & INDUSTRY INSURANCE CO., Respondents,

and

DELANO MAJORS, Petitioner,
v.
ACCENT STAFFING, INC., COMPSOURCE MUTUAL INS., CO., and THE WORKERS' COMPENSATION COMMISSION, Respondents.

ON APPEAL FROM THE WORKERS' COMPENSATION COMMISSION

¶0 The above-styled and numbered causes were made companion cases by this Court's order of October 6, 2015. The dispositive issues in each of the cases are the same. Upon consideration, we conclude that scheduled members are exempt from the AMA Guides under the Administrative Workers' Compensation Act. We also hold that the permanent partial disability deferral provision of 85A O.S. Supp. 2013 § 45(C)(5) is an unconstitutional violation of due process under Art. 2, § 7 of the Oklahoma Constitution. The deferral of permanent partial disability benefits to a subclass of injured workers under 85A O.S. Supp. 2013 § 46(C) is an unconstitutional special law in violation of Art. 5, § 59 of the Oklahoma Constitution.

WORKERS' COMPENSATION COMMISSION ORDERS IN THE ABOVE-
STYLED AND NUMBERED CAUSES VACATED; ABOVE-STYLED AND
NUMBERED CAUSES REVERSED AND REMANDED FOR PROCEEDINGS
CONSISTENT WITH TODAY'S PRONOUNCEMENT

Bob Burke, Oklahoma City, Oklahoma, for Petitioner Theresa Maxwell and Petitioner Damien Smith.
Gary Prochaska, Oklahoma City, Oklahoma, for Petitioner Damien Smith.
Bret A. Unterschuetz, Law Offices of Arthur H. Adams, P.C., Tulsa, Oklahoma, for Petitioner Jerry Hoffman.
Michael R. Green, Valerie L. Sparks, Law Offices of Michael R. Green, Tulsa, Oklahoma, for Petitioner Delano Majors.
John A. McCaleb, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Oklahoma, for Respondents Sprint PCS and American Casualty Co. of Reading, PA.
Preston G. Hanner, Caldwell, Russell, Thompson & Hanner P.C., Oklahoma City, Oklahoma, for Respondents Baze Corp. Investments and Compsource Mutual Insurance Company.
Kevin E. McCarty, McCarty & Associates, PLLC., Oklahoma City, Oklahoma, for Respondents Tulsa Gas Technologies, and Commerce and Industry Insurance Company.
David J.L. Frette, Anthony A. Blair, Perrine, Redemann, Berry, Taylor & Sloan, P.L.L.C, Tulsa, Oklahoma, for Respondent Accent Staffing Inc., and Compsource Mutual Insurance Company.
E. Scott Pruitt, Patrick R. Wyrick, Sarah A. Greenwalt, Jared B. Haines, Office of the Attorney General, Oklahoma City, Oklahoma.
Rabindranath Ramana, Calvert Law Firm, Oklahoma City, Oklahoma, for Amicus Curiae Oklahoma Coalition for Workers' Rights.
V. Glenn Coffee, Denise K. Davick, Glenn Coffee & Associates, Oklahoma City, Oklahoma, for Amicus Curiae State Chamber of Oklahoma.

GURICH, J.

Facts & Procedural History

¶1 On February 2, 2014, Petitioner Theresa Maxwell suffered an injury to her knee while working for her Employer, Respondent Sprint PCS. She promptly notified her Employer and timely filed a CC-Form-3 with the Workers' Compensation Commission on March 18, 2014. The Employer admitted Petitioner's injury to her knee was compensable, and she had surgery to repair a tendon in her knee. Petitioner also received temporary total disability benefits from February 6, 2014, until February 24, 2014. After reaching maximum medical improvement on July 2, 2014, she returned to her pre-injury position with her employer earning her pre-injury wages. On September 24, 2014, Petitioner Maxwell filed a request for a contested hearing on the issue of permanent partial disability.

¶2 A hearing was held on December 8, 2014, and the ALJ, relying on the AMA Guides 6th Edition, concluded that Petitioner sustained 2% permanent partial disability to the body as a whole as a result of the injury to her knee and that the rate of compensation was $323.00 for a total award of $2,261.00. However, because she returned to her pre-injury position and pay, the ALJ ordered the award of benefits be deferred at a rate of $323.00 beginning July 2, 2014, for every week Petitioner worked in her pre-injury or equivalent job according to 85A O.S. Supp. 2013 § 45(C)(5). Petitioner appealed the order, and the Workers' Compensation Commission sitting en banc affirmed on April 24, 2015. Petitioner Maxwell appealed to this Court on May 4, 2015, and we retained the case. On October 6, 2015, this case was made a companion case with the above-styled and numbered causes.[1]

Standard of Review

¶3 Section 78 of Title 85A provides:

C. The judgment, decision or award of the Commission shall be final and conclusive on all questions within its jurisdiction between the parties unless an action is commenced in the Supreme Court of this state to review the judgment, decision or award within twenty (20) days of being sent to the parties. Any judgment, decision or award made by an administrative law judge shall be stayed until all appeal rights have been waived or exhausted. The Supreme Court may modify, reverse, remand for rehearing, or set aside the judgment or award only if it was:

1. In violation of constitutional provisions;

2. In excess of the statutory authority or jurisdiction of the Commission;

3. Made on unlawful procedure;

4. Affected by other error of law;

5. Clearly erroneous in view of the reliable, material, probative and substantial competent evidence;

6. Arbitrary or capricious;

7. Procured by fraud; or

8. Missing findings of fact on issues essential to the decision.

85A O.S. Supp. 2013 § 78(C).

Analysis

Scheduled Members Are Exempt From the AMA Guides Under the 
AWCA

¶4 The issue of whether scheduled members are exempt from the AMA Guides under the AWCA is an issue of statutory interpretation. Statutory interpretation presents a question of law which we review under a de novo standard. Such review is plenary, independent, and non-deferential. State ex rel. Protective Health Servs. State Dep't of Health v. Vaughn, 2009 OK 61, ¶ 9, 222 P.3d 1058, 1064.

¶5 Petitioner Maxwell and Respondent Employer Sprint PCS both agree that Petitioner Maxwell's injury to her knee was an injury to her leg. Under 85A O.S. Supp. 2013 § 2(40), a leg is considered a "'scheduled member' or 'member'" along with "hands, fingers, arms, feet, toes, and eyes."[2] Section 45(C)(1), which addresses permanent partial disability, provides in part that "[a] physician's opinion of the nature and extent of permanent partial disability to parts of the body other than scheduled members must be based solely on criteria established by the current edition of the American Medical Association's 'Guides to the Evaluation of Permanent Impairment.'"[3] Respondent Employer Sprint PCS concedes[4] the AMA Guides do not apply because the statutory language specifically exempts scheduled members from the AMA Guides.[5]

¶6 The language exempting scheduled members from the AMA Guides was inserted into the workers' compensation statutes in 1977 and has remained in each and every version of the statute since that time.[6] This Court, for nearly forty years, has interpreted such language to mean exactly what it says--scheduled members are exempt from the AMA Guides.[7] "Unless a contrary intent clearly appears or is plainly expressed, the terms of amendatory acts retaining the same or substantially similar language as the provisions formerly in force will be accorded the identical construction to that placed upon them by preexisting case law."[8] Petitioner Maxwell's knee injury was exempt from evaluation under the AMA Guides.[9]

¶7 Additionally, because Petitioner Maxwell's injury was to a scheduled member, the permanent partial disability award should have been to the leg and not to the body as a whole. Section 46(A) provides:

A. An injured employee who is entitled to receive permanent partial disability compensation under Section 45 of this act shall receive compensation for each part of the body in accordance with the number of weeks for the scheduled loss set forth below.

1. Arm amputated at the elbow, or between the elbow and shoulder, two hundred seventy-five (275) weeks;

2. Arm amputated between the elbow and wrist, two hundred twenty (220) weeks;

3. Leg amputated at the knee, or between the knee and the hip, two hundred seventy-five (275) weeks;

4. Leg amputated between the knee and the ankle, two hundred twenty (220) weeks;

5. Hand amputated, two hundred twenty (220) weeks;

6. Thumb amputated, sixty-six (66) weeks;

7. First finger amputated, thirty-nine (39) weeks;

8. Second finger amputated, thirty-three (33) weeks;

9. Third finger amputated, twenty-two (22) weeks;

10. Fourth finger amputated, seventeen (17) weeks;

11. Foot amputated, two hundred twenty (220) weeks;

12. Great toe amputated, thirty-three (33) weeks;

13. Toe other than great toe amputated, eleven (11) weeks;

14. Eye enucleated, in which there was useful vision, two hundred seventy-five (275) weeks;

15. Loss of hearing of one ear, one hundred ten (110) weeks;

16. Loss of hearing of both ears, three hundred thirty (330) weeks; and

17. Loss of one testicle, fifty-three (53) weeks; loss of both testicles, one hundred fifty-eight (158) weeks.[10]

The parts of the body listed in § 46(A) include arm, leg, hand, foot, fingers, toes, eyes, ears (loss of hearing), and testicles. Except for the testicles, the body parts listed in the § 46(A) schedule are the same body parts defined as scheduled members. Additionally, arms, legs, hands, feet, fingers, toes, and eyes have been classified as scheduled members since the inception of the system in 1915.[11] The "other cases" provision in § 46(C) by its terms applies only to "an injury to a part of the body not specifically covered by the foregoing provisions of this section," i.e., § 46(A). 85A O.S. Supp. 2013 § 46(C). The "other cases" provision has also applied to "all other cases" since 1915.[12]

¶8 While amputations to parts of the body listed in § 46(A) are compensated for the number of weeks listed, § 46(B) goes on to state that "[t]he permanent partial disability rate of compensation for amputation or permanent total loss of use of a scheduled member specified in this section shall be seventy percent (70%) of the employee's average weekly wage, not to exceed Three Hundred Twenty-three dollars ($323.00), multiplied by the number of weeks as set forth in this section, regardless of whether or not the injured employee is able to return to his or her pre-injury job." 85A O.S. Supp. 2013 § 46(B) (emphasis added). Additionally, § 46(G) provides that "[c]ompensation for permanent total loss of use of a member shall be the same as for amputation of the member." 85A O.S. Supp. 2013 § 46(G) (emphasis added). The use of the word "amputated" in the schedule in § 46(A), by further definition, actually means amputations OR "permanent total loss of use of a scheduled member" OR "permanent total loss of use of a member."

¶9 "Permanent total loss of use" is not a defined term in the AWCA. Previous versions of the statute used the term "permanent loss of use," meaning incapable of use in the ordinary manner. Bristow Cotton Oil Co. v. State Indus. Com'n, 1920 OK 117, ¶ 4, 188 P. 658, 658. Neither the Attorney General nor any Employer has pointed to any meaningful distinction between "permanent total loss of use" and "permanent loss of use," and we find none. Therefore, the phrase "permanent total loss of use of a scheduled member" translates to 100% loss of a scheduled member.

¶10 Although we recognize the statute under consideration does not specifically reference partial loss of use,[13] as the AWCA is structured, an injury either falls under § 46(A) and is compensated according to that specific body part, or an injury falls under § 46(C) "other cases" and is compensated to the body as a whole. This statutory structure has been in place since 1915,[14] and this Court's construction of such has gone unchanged since that time. "Legislative familiarity with extant judicial construction of statutes is presumed."[15] In the case before us, a "[l]eg amputated at the knee, or between the knee and the hip" would include the knee, so amputation or total loss of use of the knee (100% loss) would be compensated at a maximum of 275 weeks. Partial loss of the knee (less than 100% loss) would then be compensated for the number of weeks the partial loss bears to 275 weeks. On remand, the ALJs shall recalculate the permanent partial disability awards in the above-styled and numbered causes in accordance with this opinion.[16]

The Permanent Partial Disability Deferral Provision of 85A O.S. Supp.
2013 § 45(C)(5) is a Violation of Due Process Under the Oklahoma
Constitution

¶11 After erroneously applying the AMA Guides to a scheduled member and concluding that Petitioner Maxwell sustained 2% permanent partial disability to the body as a whole as a result of the injury to her knee, the ALJ awarded Petitioner Maxwell a permanent partial disability award of $2,261.00. However, because Petitioner Maxwell returned to her pre-injury position and pay, the ALJ ordered the award of benefits be deferred according to 85A O.S. Supp. 2013 § 45(C)(5).

The deferral provision of § 45(C)(5) of Title 85A provides:

5. Except pursuant to settlement agreements entered into by the employer and employee, payment of a permanent partial disability award shall be deferred and held in reserve by the employer or insurance company if the employee has reached maximum medical improvement and has been released to return to work by his or her treating physician, and then returns to his pre-injury or equivalent job for a term of weeks determined by dividing the total dollar value of the award by seventy percent (70%) of the employee's average weekly wage.

a. The amount of the permanent partial disability award shall be reduced by seventy percent (70%) of the employee's average weekly wage for each week he works in his pre-injury or equivalent job.

b. If, for any reason other than misconduct as defined in Section 2 of this act, the employer terminates the employee or the position offered is not the pre-injury or equivalent job, the remaining permanent partial disability award shall be paid in a lump sum. If the employee is discharged for misconduct, the employer shall have the burden to prove that the employee engaged in misconduct.

c. If the employee refuses an offer to return to his pre-injury or equivalent job, the permanent partial disability award shall continue to be deferred and shall be reduced by seventy percent (70%) of the employee's average weekly wage for each week he refuses to return to his pre-injury or equivalent job.

d. Attorney fees for permanent partial disability awards, as approved by the Commission, shall be calculated based upon the total permanent partial disability award and paid in full at the time of the deferral.

e. Assessments pursuant to Sections 31, 98, 112 and 165 of this act shall be calculated based upon the amount of the permanent partial disability award and shall be paid at the time of the deferral.[17]

Section 2 of Title 85A defines "[p]re-injury or equivalent job" as "the job that the claimant was working for the employer at the time the injury occurred or any other employment offered by the claimant's employer that pays at least one hundred percent (100%) of the employee's average weekly wage[.]" 85A O.S. Supp. 2013 § 2(37).

¶12 The Attorney General argues that the newly inserted permanent partial disability benefits "deferral provision advances a legislative policy that disability payments be directly connected to a reduction in earnings capacity."[18] Since 1941, permanent partial disability compensation has been awarded solely on the basis of loss of function as established by medical evidence, and an injured employee's loss of earning capacity has been arbitrarily fixed by statute and a claimant has not been required to present evidence of loss of wage-earning capacity.[19] Once a permanent partial disability award became final, the injured employee was entitled to receive the money awarded in weekly benefits. The money awarded represented the total "damages" suffered by the employee.

¶13 Under the AWCA, the newly defined term "[d]isability" is defined as "incapacity because of compensable injury to earn, in the same or any other employment, substantially the same amount of wages the employee was receiving at the time of the compensable injury[.]"[20] Additionally, permanent partial disability is now defined as "a permanent disability or loss of use after maximum medical improvement has been reached which prevents the injured employee, who has been released to return to work by the treating physician, from returning to his or her pre-injury or equivalent job. All evaluations of permanent partial disability must be supported by objective findings[.]" 85A O.S. Supp. 2013 § 2(34). According to this definition, permanent partial disability is no longer a mere equivalent to physical impairment or functional disability unrelated to industrial performance.[21] The above statutory language suggests the Legislature intended for permanent partial disability to be based solely on loss of earning capacity with no consideration as to the physical insult to the employee's body.

¶14 However, the AWCA also includes the term "permanent disability," which means "the extent, expressed as a percentage, of the loss of a portion of the total physiological capabilities of the human body as established by competent medical evidence and based on the current edition of the American Medical Association guides to the evaluation of impairment, if the impairment is contained therein," indicating that loss of function in the medical sense is still relevant to a disability determination. 85A O.S. Supp. 2013 § 2(33) (emphasis added). Additionally, 85A O.S. Supp. 2013 § 45(C)(1) addresses the "competent medical testimony of a medical doctor, osteopathic physician, or chiropractor," that is necessary to support a permanent partial disability determination. Ambiguities and inconsistencies abound in the AWCA, but regardless, as the system has been implemented by the Commission, the due process rights of injured employees have been unconstitutionally abrogated with regard to permanent partial disability determinations and compensation.

¶15 Article 2, § 7 of the Oklahoma Constitution provides: "No person shall be deprived of life, liberty, or property, without due process of law."[22] This Court has held that "Oklahoma's due process clause has a definitional sweep that is coextensive with its federal counterpart,"[23] and that the "'Due Process Clause provides that certain substantive rights--life, liberty, and property--cannot be deprived except pursuant to constitutionally adequate procedures.'" Daffin, 2011 OK 22, ¶ 20, 251 P.3d 741, 748 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985)). "'The right to due process "is conferred, not by legislative grace, but by constitutional guarantee."'" Id. Although the Legislature may "alter private contractual rights of employers and employees when it properly exercises its police power in creating a particular workers' compensation law," the Legislature may not deprive such rights, once conferred, without appropriate procedural safeguards. Yaumary Concepcion Torres v. Seaboard Foods, L.L.C., 2016 OK 20, ¶ 30, ___P.3d___ (emphasis added); see also Daffin, 2011 OK 22, ¶ 20, 251 P.3d at 748.

¶16 We first note that the AWCA orders the Commission, through its ALJs, "to hear and determine claims for compensation and to conduct hearings and investigations and to make such judgments, decisions, and determinations as may be required by any rule or judgment of the Commission." 85A O.S. Supp. 2013 § 22(D). By statutory directive, the ALJs undoubtedly act in an adjudicative capacity in the administrative workers' compensation system because adjudication includes "the authority to hear and determine forensic disputes." Yocum v. Greenbriar Nursing Home, 2005 OK 27, ¶ 13, 130 P.3d 213, 220. "When an administrative board acts in an adjudicative capacity, it functions much like a court" and such proceedings are quasi-judicial in nature.[24] Thus, "[t]he constitutional guaranty of due process of law applies," and proceedings before the Commission require certain constitutional safeguards.[25]

¶17 Property interests, within the meaning of the due process clause, "are not created by the Constitution, but rather are derived from an independent source sufficient to create a legitimate claim of entitlement, such as state law or contract." Wood v. Ind. Sch. Dist. No. 141 of Pottawatomie County, 1983 OK 30, ¶ 9, 661 P.2d 892, 894. Title 85A provides that "[t]he determination of permanent partial disability shall be the responsibility of the Commission through its administrative law judges,"[26] and "[in] cases of permanent partial disability, the compensation shall be seventy percent (70%) of the employee's average weekly wage, not to exceed Three Hundred Twenty-three Dollars ($323.00) per week . . . ."[27] "Compensation" is defined in Title 85A as "the money allowance payable to the employee or to his or her dependents . . . ."[28] Section 12 provides that "[c]ompensation due an injured employee or his or her dependents shall have the same preference as is allowed by law to an employee for unpaid wages."[29] Section 91 provides: "Compensation shall bear interest pursuant to Section 727.1 of Title 12 of the Oklahoma Statutes from the day an award is made by either an administrative law judge or the full Workers' Compensation Commission on all accrued and unpaid compensation." Section 10 provides that "[t]he right to any claim, benefit or compensation shall not be released or commuted except as provided by the Administrative Workers' Compensation Act and, except for child support liens, is not assignable and is not subject to garnishment, attachment, levy, execution, or any other legal process."[30]

¶18 The "Order Awarding Permanent Partial Disability Benefits" in Petitioner Maxwell's case finds: "The Claimant sustained 2% permanent partial disability to the body as a whole for partial loss of use of her LEFT LEG (KNEE) and is awarded compensation for 7 weeks at $323.00 per week, in the total amount of $2,261.00 . . . ."[31] In accordance with Title 85A, the ALJ's order awarding Petitioner Maxwell compensation in the amount of $2,261.00 clearly vested in Petitioner Maxwell a property interest worthy of the protections of due process.

¶19 At a minimum, "due process requires notice and a meaningful opportunity to appear and be heard." Crownover, 2015 OK 35, ¶ 14, 357 P.3d at 474. This Court has long held that a "right to a full hearing includes a reasonable opportunity to know the claims of the opposing party and to meet them. There must be adequate notice of the issues, and the issues must be clearly defined in order that an administrative hearing is fair. All parties must be apprised of the charges so they may test, explain or rebut it. They must be given an opportunity to cross-examine witnesses and to present evidence." Wolfenbarger, 1974 OK 38, ¶ 15, 520 P.2d at 812 (emphasis added).

¶20 Petitioner Maxwell, upon reaching maximum medical improvement and returning to work, requested a hearing on the issue of permanent partial disability. At the hearing, Petitioner Maxwell's employer was allowed to present evidence of her return to work as proof Petitioner Maxwell did not suffer a loss of wage-earning capacity. Petitioner Maxwell was limited to presenting medical evidence only. Petitioner Maxwell's return to work was the only evidence considered by the ALJ in determining whether Petitioner Maxwell actually suffered any loss of wage-earning capacity.

¶21 The Legislature cannot pre-determine that an injured worker has in fact had no loss of wage-earning capacity because he or she returned to his or her job making the same wages.[32] An employee who has sustained a permanent injury may not suffer a reduction of immediate earning capacity by returning to his or her job, but it is often likely his or her "ultimate earning capacity will be reduced either by a shortening of his work life or a reduction of employment opportunities through a combination of age and physical impairment." Hawkins Bros. Coal Co. v. Thacker, 468 S.W. 2d 256, 257 (Ky. 1971) (internal quotations omitted). In fact, a permanent physical impairment caused by a work-related injury "frequently results in a reduced earning capacity in the future rather than an immediate reduction in present earning capacity." Vail Assocs. Inc. v. West, 692 P.2d 1111, 1115 (Colo. 1984) (emphasis added). Evidence of loss of wage-earning capacity could include the injured employee's age, education, work history, vocational training, transferable skills, job opportunities, fitness to perform certain jobs, wage levels, or other information relating to his or her employment situation.[33]

¶22 We also note that Petitioner Maxwell returned to work on July 2, 2014. The hearing on permanent partial disability wasn't held until December 8, 2014. In her order awarding permanent partial disability benefits, the ALJ deferred Petitioner Maxwell's permanent partial disability award at a rate of $323.00 beginning July 2, 2014, for every week Claimant worked in her pre-injury job. Thus, Petitioner Maxwell's permanent partial disability award was exhausted well before the hearing on permanent partial disability actually took place. Under the statutory deferral scheme, an injured employee who returns to work loses the ability to collect any subsequent permanent partial disability award issued by the ALJ because by the time the case is heard, enough time will have passed so that the injured employee, in most cases, will have forfeited his right to receive any portion of the permanent partial disability award. The due process clause of the Oklahoma Constitution protects "citizens from arbitrary and unreasonable action by the state." City of Edmond v. Wakefield, 1975 OK 96, ¶ 6, 537 P.2d 1211, 1213. "[S]tate statutes which attempt to take away vested property interest, or work an arbitrary forfeiture of property rights are unconstitutional as violations of due process." Id. (internal citations omitted).

¶23 The Attorney General argues that one of the policy rationales behind the deferral provision is to ensure that employees terminated for misconduct are not inappropriately compensated with disability payments when they are capable of returning to their pre-injury position. But the deferral provision fails to even remotely advance this interest.[34] As discussed above, Petitioner Maxwell forfeited her permanent partial disability benefits by simply returning to work.[35] Additionally, in Petitioner Smith's case, his employer admitted he suffered a compensable knee injury in the course and scope of his employment. He received temporary total disability benefits and had surgery to repair a torn meniscus. He returned to his pre-injury job on August 19, 2014, after reaching maximum medical improvement and being released by his physician. Approximately one month later on September 22, 2014, due to causing damage while driving a company vehicle, Petitioner Smith was terminated for misconduct by his employer.[36] Not until February 12, 2015, was Petitioner Smith awarded $947.31 in permanent partial disability benefits.[37] That award was ordered deferred upon the date he returned to work--August 19, 2014. At his benefit rate of $270.66 per week, Petitioner Smith's entire permanent partial disability award was forfeited within three weeks of returning to work.[38]

¶24 Under the deferral scheme, an employee's permanent partial disability award is not deferred upon his or her termination for misconduct--it is deferred immediately upon the return to work. Therefore, an employee could not "reap rewards in the form of disability payments" based upon a subsequent termination as the Attorney General suggests. As the deferral provision is written, the employer is encouraged to allow the injured worker to return to work only until the deferred award is exhausted. The deferral provision then incentivizes the employer to terminate the employee for misconduct--a very broadly defined term under the AWCA.[39] So after re-employing the injured worker for only a short time, the employer pays no permanent partial disability benefits to an employee who was admittedly injured on the job and the employer may "legally" rid himself of the undesirable employee. Termination for misconduct becomes a second-stage defense to avoid paying an award for an admitted or adjudicated compensable injury that occurred in the course and scope of employment.

¶25 Permanent partial disability benefits, and workers' compensation benefits generally, are not "rewards" or punishment--these benefits replace something the employee lost for which the employer is liable. Workers' compensation is an administrative remedy that exists in lieu of other remedies at law. The AWCA, and its predecessor the Workers' Compensation Code,[40] is based on exclusivity, meaning the employee relinquishes a common-law right to bring an action in district court against his or her employer[41] while the employer relinquishes certain common-law defenses available in civil actions and is required to "secure compensation as provided under this act to its employees for compensable injuries without regard to fault."[42] The deferral provision coupled with misconduct reinstates the concept of fault into a no-fault system and results in a forfeiture of benefits by the injured employee.

¶26 We also note that Section 45(C)(5)(c) provides that "[i]f the employee refuses an offer to return to his pre-injury or equivalent job, the permanent partial disability award shall continue to be deferred and shall be reduced by seventy percent (70%) of the employee's average weekly wage for each week he refuses to return to his pre-injury or equivalent job."[43] But if the employee accepts the offer to return to his or her pre-injury job, the award is still deferred under § 45(C)(5). The statutory deferral scheme is intended to deny permanent partial disability benefits to the majority of injured employees by operation of law. The deferral scheme creates blanket immunity for employers with regard to payment of permanent partial disability benefits and punishes all employees who suffer compensable, admitted injuries.[44]

¶27 In Torres we said that our "constitutional analysis must be based upon what the legislation actually accomplishes . . . ."[45] In actuality, despite the fact the Commission continues to presume that an employee's loss of earning capacity is measured by the degree of physical disability sustained and is arbitrarily fixed by statute, the monetary award based on the physical disability rating to the employee's body becomes meaningless once the employee returns to work. An injured employee who returns to work receives no compensation for the physical injury sustained and no compensation for a reduction in future earning capacity, upending the entire purpose of the workers' compensation system, which is to compensate "for loss of earning power and disability to work occasioned by injuries to the body in the performance of ordinary labor." Evans & Assocs. Util. Servs., 2011 OK 81, ¶ 14, 264 P.3d 1190, 1195. Further, taking away an employee's permanent partial disability benefits because of misconduct--a term based on fault of the employee--is invalid in a no-fault system. The deferral provision of § 45(C)(5) tramples the due process rights of injured workers and is unconstitutional under Art. 2, § 7 of the Oklahoma Constitution.[46]

The Deferral of Permanent Partial Disability Benefits to a Subclass of
Injured Workers is an Unconstitutional Special Law in Violation of Art. 5,
§ 59 of the Oklahoma Constitution

¶28 Section 46 of the AWCA presents additional constitutional problems. Section 46(C) makes the deferral provision of § 45(C)(5) applicable only to injuries to the body as a whole or "other cases."[47] The deferral provision does not apply to injuries to scheduled members under § 46(A).[48] Section 46(C) is a special law that creates a subclass of employees subject to differential treatment.

¶29 In Grant v. Goodyear Tire & Rubber Co., 2000 OK 41, 5 P.3d 594, this Court said: "For a special law to be permissible, there must be some distinctive characteristic warranting different treatment and that furnishes a practical and reasonable basis for discrimination. If there is neither a distinctive characteristic upon which a different treatment may reasonably be founded nor one which furnishes a practical and real basis for discrimination between the two groups within the class, the distinction becomes arbitrary and without relation to the subject matter."[49]

¶30 Under the AWCA, the Legislature has arbitrarily determined that employees who suffer injuries to scheduled members and who receive permanent partial disability awards under § 46(A) are unable to return to work, and thus, entitled to receive the permanent partial disability award. But even an employee who suffers the total loss of use of a hand, for example, may in some circumstances be able to return to his or her pre-injury job. We find no valid reason for the differential treatment of injured employees under § 46(A) and § 46(C). Although the Legislature has the power to exclude classes of employees from coverage under the workers' compensation system generally, the Legislature is without power to vary the effect of a permanent partial disability award by excluding one group of claimants from benefits accorded other permanent partial disability recipients.[50] The deferral of permanent partial disability benefits to a subclass of injured workers is an unconstitutional special law under Art. 5, § 59 of the Oklahoma Constitution.

Conclusion

¶31 We conclude that scheduled members are exempt from the AMA Guides under the AWCA. We also hold that the permanent partial disability deferral provision of 85A O.S. Supp. 2013 § 45(C)(5) is an unconstitutional violation of due process under Art. 2, § 7.[51] Sections 45(C)(5)(a-e) are invalid and stricken. The deferral of permanent partial disability benefits to a subclass of injured workers under 85A O.S. Supp. 2013 § 46(C) is an unconstitutional special law under Art. 5, § 59.[52] Only that portion of § 46(C) that makes the deferral provision applicable to injuries to the body as a whole or "other cases" is invalid. Any definitional provisions found in 85A O.S. Supp. 2013 § 2, as discussed herein, are invalid to the extent they are inconsistent with the views expressed today. On remand, the Commission, through its ALJs, shall take all action necessary to implement today's pronouncement.

WORKERS' COMPENSATION COMMISSION ORDERS IN THE ABOVE-
STYLED AND NUMBERED CAUSES VACATED; ABOVE-STYLED AND
NUMBERED CAUSES REVERSED AND REMANDED FOR PROCEEDINGS
CONSISTENT WITH TODAY'S PRONOUNCEMENT 

¶32 Reif, C.J., Combs, V.C.J., Kauger, Edmondson and Gurich, JJ., concur.

¶33 Watt and Colbert (by separate writing with whom Watt, J., joins), JJ., concur in part and dissent in part.

¶34 Winchester and Taylor, JJ., dissent.

FOOTNOTES

[1] In Case No. 113,811, Damien Lequint Smith v. Baze Corp. Investments, Inc. and Compsource Mutual Ins. Co., the Claimant injured his knee on February 26, 2014. The Employer admitted Claimant's injury was compensable. Claimant received temporary total disability benefits and had surgery to repair a torn meniscus. Claimant reached maximum medical improvement on August 19, 2014, and returned to his pre-injury position at the same wages. Claimant then sought and was awarded permanent partial disability benefits for a 1% impairment to the body as a whole. The $947.31 permanent partial disability award was deferred pursuant to 85A O.S. Supp. 2013 § 45(C)(5). After the Workers' Compensation Commission affirmed the decision, Claimant appealed to this Court, and we retained the case. We held oral argument in Case No. 113,811 on September 30, 2015.

In Case No. 113,941, Jerry D. Hoffman v. Tulsa Gas Technologies, and Commerce & Industry Ins. Co., the Claimant injured his knee on July 30, 2014. The Employer admitted Claimant's injury was compensable. Claimant received temporary compensation and medical treatment. Claimant reached maximum medical improvement on October 6, 2014, and returned to his pre-injury position at the same wages. Claimant then sought and was awarded permanent partial disability benefits for a 2% impairment to the body as a whole. The $2,261.00 permanent partial disability award was deferred pursuant to 85A O.S. Supp. 2013 § 45(C)(5). After the Workers' Compensation Commission affirmed the decision, Claimant appealed to this Court, and we retained the case. On June 15, 2015, we stayed this case by agreement of the parties until a decision issues in the above-styled and numbered causes. The stay in this case, Case No. 113,941, is lifted.

In Case No. 114,161, Delano Majors v. Accent Staffing Inc., Compsource Mutual Ins. Co. and The Workers' Compensation Commission, the Claimant injured his hand on March 31, 2014. The Employer admitted Claimant's injury was compensable. Claimant received temporary total disability benefits and had surgery on his wrist. Claimant was last seen by his treating physician on September 14, 2014, wherein the doctor ordered Claimant to return to work only on an as needed basis and released Claimant without restriction. Claimant has not worked since being released. Claimant then sought and was awarded permanent partial disability benefits for a 3% impairment to the body as a whole. Claimant's $3,369.03 permanent partial disability award was not deferred pursuant to 85A O.S. Supp. 2013 § 45(C)(5). After the Workers' Compensation Commission affirmed the decision, Claimant appealed to this Court, arguing that the Commission improperly used the AMA Guides to rate the injury to his hand and that the Commission improperly converted the injury to his hand to the body as a whole. We retained the case.

[2] "[F]or purposes of the Multiple Injury Trust Fund only, 'scheduled member' [also] means hearing impairment." 85A O.S. Supp. 2013 § 2(40).

[3] 85A O.S. Supp. 2013 § 45(C)(1). Although the AMA Guides is a method to evaluate an injury to a scheduled member, a permanent impairment rating to a scheduled member need not conform to the AMA Guides, and a medical report should not be discounted based solely on noncompliance with the AMA Guides.

[4] While we accept Respondent's concession, we nevertheless address the issue as this Court is the final arbiter of the meaning of the statute. see Tucker v. ADG, Inc., 2004 OK 71, ¶ 12, 102 P.3d 660, 665 ("'Oklahoma case law has long allowed admissions in the brief to be regarded as a supplement to the appellate record.'") (quoting Brennen v. Aston, 2003 OK 91, n.3, 84 P.3d 99, 100 n.3).

[5] The parties agree that the AMA Guides 6th Edition is the most current version of the AMA Guides. Claimants in Case Nos. 113,898 and 113,811 spend a considerable amount of time in the briefs discussing the problems with the drafting and substance of the 6th Edition, in particular, its alleged faulty quantification and low impairment rating system. Specifically, Claimants point to a congressional hearing held in 2010 wherein the Congressional Subcommittee on Workforce Protection took testimony regarding the use of the AMA Guides 6th Edition in state workers' compensation systems. Because we find the AMA Guides do not apply in this case, we need not address Claimant's constitutional arguments regarding the AMA Guides 6th Edition.

However, we note that the records in these cases are wholly deficient for this Court to consider any of the constitutional issues raised regarding the AMA Guides 6th Edition. No portion of the AMA Guides 6th Edition was included in any record. The only party to include any portion of the AMA Guides 6th Edition was the Amicus Curiae Oklahoma Coalition for Workers' Rights in Case No. 113,811. None of the records in these cases clearly provide the difference in rating had a different edition of the Guides been used. The 6th Edition, which was adopted in 2007, of the Guides states that "[i]n this edition there is a paradigm shift, which adopts a contemporary model of disablement; it is simplified, functionally based, and internally consistent to the fullest extent possible." Brief of the Oklahoma Coalition For Workers' Rights, Case No. 113,811, Ex. A at 5. The records in these cases do not indicate whether the Physician's Advisory Committee has, since 2007, evaluated and weighed in on this "paradigm shift." Although reference is made to the 2010 Congressional hearing on the 6th Edition, no transcript of such is included in our record. Additionally, the records in these cases do not contain any semblance of a Daubert challenge to the 6th Edition through expert testimony. See 85A O.S. Supp. 2013 § 72(D); Scruggs v. Edwards, 2007 OK 6, ¶ 9, 154 P.3d 1257, 1262.

[6] See 85A O.S. Supp. 2013 § 45(C)(1) ("A physician's opinion of the nature and extent of permanent partial disability to parts of the body other than scheduled members must be based solely on criteria established by the current edition of the American Medical Association's 'Guides to the Evaluation of Permanent Impairment.'") (emphasis added); 85 O.S. 2011 § 333(A) ("A physician's opinion of the nature and extent of permanent partial impairment to parts of the body other than scheduled members must be based solely on criteria established by the American Medical Association's 'Guides to the Evaluation of Permanent Impairment,' Fifth Edition, or any subsequent edition approved by the Administrator after public hearing and review by the Physician Advisory Committee, hereinafter referred to as 'Guides.'") (emphasis added); 85 O.S. Supp. 1996 § 3(11) ("These officially adopted guides or modifications thereto or alternative system or method of evaluating permanent impairment or modifications thereto shall be the exclusive basis for testimony and conclusions with regard to permanent impairment with the exception of paragraph 3 of Section 22 of this title, relating to scheduled member injury or loss; and impairment, including pain or loss of strength, may be awarded with respect to those injuries or areas of the body not specifically covered by said guides or alternative to said guides.") (emphasis added); 85 O.S. Supp. 1994 § 3(11) ("These officially adopted guides or modifications thereto shall be the exclusive basis for testimony and conclusions with regard to permanent impairment with the exception of paragraph 3 of Section 22 of this title, relating to scheduled member injury or loss; and impairment, including pain or loss of strength, may be awarded with respect to those injuries or areas of the body not specifically covered by said guides.") (emphasis added); 85 O.S. Supp. 1985 § 3(11) ("These officially adopted guides shall be the exclusive basis for testimony and conclusions with regard to permanent impairment with the exception of paragraph 3 of Section 22 of this title, relating to scheduled member injury or loss; and impairment, including pain or loss of strength, may be awarded with respect to those injuries or areas of the body not specifically covered by said guides.") (emphasis added); 85 O.S. Supp. 1977 § 3(11) ("These officially adopted guides shall be the basis for testimony and conclusions with regard to permanent impairment with the exception of paragraph 3 of Section 22 of this title, relating to scheduled member loss.") (emphasis added).

[7] see B.F. Goodrich v. Hilton, 1981 OK 114, ¶ 5, 634 P.2d 1308, 1310 (holding that "a plain reading of the statute reveal[ed] that the Guides shall be the basis for testimony and conclusions concerning permanent impairment, with the exception" of scheduled members in 85 O.S. Supp. 1978 § 22(3)).

[8] Special Indem. Fund v. Figgins, 1992 OK 59, ¶ 8, 831 P.2d 1379, 1382 (emphasis added).

[9] As mentioned above, all of the respective injuries to the petitioners in the above-styled and numbered companion cases were injuries to scheduled members, specifically the legs and hand. see supra note 1. If the AMA Guides do not apply to scheduled members, neither do the conversion tables to the body as whole.

[10] 85A O.S. Supp. 2013 § 46(A) (emphasis added).

[11] 1915 Okla. Sess. Laws, ch. 246, art. 2, § 6.

[12] Id.

[13] Previous versions of the statute provided:

Loss of Use: Permanent loss of use of a thumb, finger, toe, arm, hand, foot, leg or eye shall be considered as the equivalent of the loss of such thumb, finger, toe, hand, arm, foot, leg or eye.

For the permanent partial loss of use of a member, loss of hearing or sight of an eye, seventy percent (70%) of the employee's average weekly wage during that portion of the number of weeks in the foregoing schedule provided for the loss of such member or sight of an eye which the partial loss of use thereof bears to the total loss of use of such member, loss of hearing or sight of an eye.

85 O.S. 2011 § 333(E).

[14] 1915 Okla. Sess. Laws, ch. 246, art. 2, § 6.

[15] Figgins, 1992 OK 59, ¶ 8, 831 P.2d at 1382.

[16] The ALJs shall also allow for the admission of additional medical evidence if requested by the parties.

[17] 85A O.S. Supp. 2013 § 45(C)(5) (emphasis added).

[18] Attorney General's Brief on the Merits of the Constitutional Claims, Case No. 113,898, at 16. The Solicitor General argued at oral argument in Case No. 113,898 that the overriding legislative intent of the AWCA was to align permanent partial disability benefits with the other three types of benefits to create a disability-based regime. Since its inception, the system has been designed to restore loss of earning capacity through four categories of benefits: permanent total disability, temporary total disability, temporary partial disability, and permanent partial disability. Temporary total, temporary partial, and permanent total disability benefits have been, and continue to be, compensated based on an injured employee's disability, meaning "incapacity or loss of function in the physical or medical sense" established by medical evidence, and the injured employee's "inability to earn wages" as demonstrated by nonmedical evidence with regard to the employee's "employment situation." Gray v. Natkin Contracting, 2001 OK 73, ¶¶ 14-15, 44 P.3d 547, 551.

[19] From 1915 to 1941, a claimant who suffered an injury classified as an "other case" was required to present evidence of loss of wage-earning capacity to be entitled to a permanent partial disability award. Such provision was amended in 1941 to "arbitrarily fix[] an employee's loss of earning capacity measured by his physical disability or by the degree of disability sustained." Ford v. Nellie B. Mining Co., 1953 OK 150, ¶ 9, 255 P.2d 504, 506.

[20] 85A O.S. Supp. 2013 § 2(16). The term "disability" has not previously been statutorily defined, but this Court has measured disability "by a worker's capacity to perform 'ordinary manual or mechanical labor.' An injury to a specific, scheduled member of the body (a classified disability) was measured by the number of weeks in the member schedule, while one to an 'unclassified part of the body' fell under the 'other cases' clause of § 22 and was compensated on the basis of percentage disability to the body as a whole." Farm Fresh Inc. v. Bucek, 1995 OK 44, ¶ 8, 895 P.2d 719, 722.

[21] In 1977, significant amendments were made to the to the workers' compensation system. Notably, coverage was extended to nearly all Oklahoma employees, not just to those in hazardous employment, and a "mixed impairment-related and disability-based benefits regime" was introduced. Bucek, 1995 OK 44, ¶ 9, 895 P.2d at 722. The disability-based benefits regime encompassed permanent total disability benefits, temporary partial disability benefits, and temporary total disability benefits. Id. ¶ 10, 895 P.2d at 722. The impairment-related benefits regime encompassed permanent partial disability benefits, defined to mean "permanent disability which is less than total and [is] equal to or the same as permanent impairment." 85 O.S. Supp. 1977 § (3)(13) (emphasis added). This change in definition "introduce[d] a new and more specific concept for evaluating permanent partial disability" making it equal to permanent impairment or loss of bodily function. Bucek, 1995 OK 44, ¶ 11, 895 P.2d at 723.

[22] Okla. Const. art. 2, § 7.

[23] Crownover v. Keel, 2015 OK 35, n.5, 357 P.3d 470, 474 n.5. The federal due process clause provides:

[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. Today's decision with regard to Art. 2, § 7, of the Oklahoma Constitution is based on Oklahoma law, which provides bona fide, separate, adequate and independent grounds for our decision. see Crownover, 2015 OK 35, n.5, 357 P.3d at 474 n.5.

[24] Bowen v. State ex rel. Okla. Real Estate Appraiser Bd., 2011 OK 86, ¶ 15, 270 P.3d 133, 137.

[25] Wolfenbarger v. Hennessee, 1974 OK 38, ¶ 12, 520 P.2d 809, 812-13.

[26] 85A O.S. Supp. 2013 § 45(C)(1).

[27] 85A O.S. Supp. 2013 § 45(C)(4).

[28] 85A O.S. Supp. 2013 § 2(10).

[29] 85A O.S. Supp. 2013 § 12.

[30] 85A O.S. Supp. 2013 § 10(A).

[31] Record on Appeal, Case No. 113,898, at 20 (emphasis added).

[32] "The Legislature is confined to mandating what facts must be adjudged. It may neither predetermine adjudicative facts nor direct that their presence or absence be found from any proof before a tribunal." Yocum, 2005 OK 27, ¶ 14, 130 P.3d at 221-22.

[33] 1 Modern Workers' Compensation § 306:24.

[34] In Torres, we addressed a due process challenge to 85A O.S. Supp. 2013 § 2(14), which required an employee to have worked a continuous 180-day period before receiving cumulative trauma benefits. In that case we said:

Our more modern expressions of this historically recognized constitutional limitation on police power have explained that a court must examine whether legislation is rationally related to a legitimate government interest and if the challenged legislation reasonably advances that interest. This analysis requires an adjudication whether a legitimate State interest exists and whether it is rationally related to the legislation. 

Torres, 2016 OK 20, ¶ 27, ___P.3d___ (emphasis added).

[35] Petitioner Hoffman also forfeited his permanent partial disability award by simply returning to work. see supra note 1.

[36] Petitioner Smith did not dispute this was his second infraction of company policy regarding improper use of a company vehicle.

[37] After attorney's fees were deducted, Petitioner Smith's total award was $757.84.

[38] Petitioner's Brief in Chief, Case No. 113,811, at 17. We again note that Petitioner Smith's permanent partial disability award was also exhausted well before the hearing on permanent partial disability was held in January of 2015.

[39] 85A O.S. Supp. 2013 § 2(30). "Misconduct" shall include the following:

a. unexplained absenteeism or tardiness,
b. willful or wanton indifference to or neglect of the duties required,
c. willful or wanton breach of any duty required by the employer,
d. the mismanagement of a position of employment by action or inaction,
e. actions or omissions that place in jeopardy the health, life, or property of self or others,
f. dishonesty,
g. wrongdoing,
h. violation of a law, or
i. a violation of a policy or rule adopted to ensure orderly work or the safety of self or others[.]

[40] 85 O.S. 2011 § 301 et seq.

[41] 85A O.S. Supp. 2013 § 5.

[42] 85A O.S. Supp. 2013 § 35(A)(1) (emphasis added).

[43] 85A O.S. Supp. 2013 § 45(C)(5)(c) (emphasis added). Presumably, the employer decides whether the job offered is an "equivalent job."

[44] The Attorney General also argues that the deferral provision encourages employers to retain injured employees. But that argument is not well taken because as the deferral provision is written, a termination of any kind can substantially reduce the employer's financial liability. Section 45(C)(5)(b) provides that if the employer terminates an employee for a reason not meeting the definition of misconduct, the only amount to be collected by the employee is the remainder of the permanent partial disability award paid to the employee in a lump sum. In some cases this "lump sum" could be as little as $323.00, which is the average weekly wage.

[45] Torres, 2016 OK 20, ¶ 21. ___P.3d___.

[46] We also note that in Petitioner Smith's case, Case No. 113,811, the ALJ found that based on the "apparent intent of the legislature, and the expressed intent of the Commission," "the AMA Guides, would be a valid method" to evaluate an injury to a scheduled member and that an injury to a scheduled member should be measured to the body as whole." The ALJ relied specifically on a "Notice Regarding Evaluation of Permanent Impairment" issued on April 16, 2014, by the Executive Director of the Commission. Such notice directs "Workers' Compensation Insurance Carriers, Self-Insured Employers, Group Self-Insurance Associations, CompSource Oklahoma, Third-Party Administrators, Injured Workers, Attorneys, [and] Other Interested Persons" to rate permanent partial loss of scheduled members under the AMA Guides.

No public notice or comment period was given and no hearing was held before the issuance of this particular Notice. Since the creation of the Commission, the Executive Director has issued approximately fourteen such notices on a variety of subjects. Neither the Commission rules nor Title 85A give the Executive Director the authority to issue such notices, and only the appellate courts of this State have the authority to render a binding interpretation of a state statute. The issuance of this Notice lacked any semblance of the procedural due process protections required by Art. 2, § 7 of the Oklahoma Constitution and such action was clearly in excess of the Commission's jurisdiction.

[47] Section 46(C) provides that "[i]n cases in which the Commission finds an injury to a part of the body not specifically covered by the foregoing provisions of this section, the employee may be entitled to compensation for permanent partial disability." 85A O.S. Supp. 2013 § 46(C) (emphasis added).

[48] Section 46(A) provides that "[a]n injured employee who is entitled to receive permanent partial disability compensation under Section 45 of this act shall receive compensation for each part of the body in accordance with the number of weeks for the scheduled loss set forth below." 85A O.S. Supp. 2013 § 46(A) (emphasis added).

[49] Grant, 2000 OK 41, ¶ 10, 5 P.3d at 598 (emphasis added) (internal citations omitted). In Grant, the claimant was injured while working for her employer Goodyear Tire & Rubber Company. The Claimant qualified for the maximum rate of temporary total disability compensation, but Goodyear paid the claimant her regular wages, which were at a higher rate than that required by statute. Goodyear, who was self-insured, requested credit for the overpayment of temporary total disability pursuant to 85 O.S. Supp. 1999 § 41.1. Although subsection (A) of § 41.1 did not allow an employer or insurance carrier to receive a credit or deduct "from the amount of the award for permanent or partial permanent disability any amounts paid for temporary total disability," subsection (B) allowed a self-insured employer to do so. Grant, 2000 OK 41, ¶ 2, 5 P.3d at 596.

In its analysis, this Court first distinguished between a general law and a special law: "A statute is a general law if it relates to persons or things as a class rather than relating to particular persons or things," and "[a] statute is a special law where a part of the entire class of similarly affected persons is separated for different treatment." Id. ¶ 5, 5 P.3d at 597. The Court found that subsection (B) of § 41.4 was a special law because it created a subclass of employers--those who were self-insured and who were allowed to receive credit for overpayment against any permanent disability owed. Id. ¶ 7, 5 P.3d at 596.

The Court then determined whether subsection (B) of § 41.1, the special law, was reasonably and substantially related to a valid legislative objective. The Court observed:

The Constitution does not prohibit special laws inflexibly and always. It permits them when there are special evils with which existing general laws are incompetent to cope. . . . If the evil to be corrected can be seen to be merely fanciful, the injustice or the wrong illusory, the courts may intervene and strike the special statute down.

Id., ¶ 9, 5 P.3d at 598. The Court found no valid reason to differentiate between employers who carry workers' compensation insurance and those who were self-insured, and no valid reason to differentiate in the treatment of employees whose employers carry workers' compensation insurance and employees whose employers were self-insured. The Court held that subsection (B) of § 41.1 was an impermissible special law that violated Art. 5, § 59 of the Oklahoma Constitution. Id. ¶ 12, 5 P.3d at 598.

[50] Glasco v. State ex rel. Okla. Dep't of Corrs., 2008 OK 65, ¶ 4, 188 P.3d 177, 191 (Opala, J., dissenting).

[51] Okla. Const. art. 2, § 7. Section 4(A) of Title 85A provides: "If any part of this act be decided by the courts to be unconstitutional or invalid, the same shall not affect the validity of this act as a whole, or any part thereof other than the part so decided to be unconstitutional or invalid." 85A O.S. Supp. 2013 § 4(A).

[52] Okla. Const. art. 5, § 59.

 

 

Colbert, J., concurring in part, dissenting in part with whom Watt, J., joins.

¶1 I agree that scheduled members are exempt from the AMA Guides, Sections 45(C)(5)(a-e) are an unconstitutional violation of due process under Art. 2, § 7, and Section 46(C) is an unconstitutional special law under Art. 5, § 59. But, I write separately to shed light on the remaining ambiguities that exist in this Court's piecemeal attempt to cure the Legislature's unconstitutional scheme.

¶2 The majority opinion intimates-without expressly stating-that the Legislature's enactment of the AWCA has transmogrified the previous workers' compensation scheme from a no-fault system into a fault system. Op. at ¶ 25. In so concluding, the majority strikes the expressed provisions related to deferral and misconduct found in § 45(C)(5)(a-e), but ignores the other interrelated provisions found in the AWCA-namely, §§ 2(16), (34) and (37).

¶3 The Oklahoma workers' compensation system, from its inception, was designed to compensate injured employees solely on the basis of loss of function, as expressed in terms of "impairment," i.e. permanent total disability or permanent partial disability (PPD), regardless of the employee's industrial performance.[1] But, since the AWCA's enactment, an employee's compensation is now wholly dependent upon the impact such impairment has on the employee's ability to resume employment. It is the impact of the impairment that drives whether or not the employee meets the newly defined definition of "disability."

¶4 In striking Sections 45(C)(5)(a-e), but leaving intact the remaining interrelated provisions, the majority exacerbates the ambiguities and inconsistencies found in the AWCA. As it stands, today's pronouncement does nothing more than prohibit the employer from deferring the payment of a PPD award. But, before an employee may receive a PPD award, that employee must have a PPD as defined by the AWCA.

¶5 Consider the remaining interrelated sections 2(16), (34) and (37). Those provisions define "disability" as an employee's incapacity to earn at least one hundred percent of the employee's pre-injury wages and renders any PPD determination contingent upon the employee's inability to return to "his or her pre-injury or equivalent job."[2] Id. at § 2(34). That is, despite a treating physician's determination the employee has reached maximum medical improvement (MMI), is released to and has in fact resumed employment, but has experienced a "loss of a portion of the total physiological capabilities," i.e. impairment rating,- as required in § 2(33) and acknowledged in § 2(34)-the employee is nonetheless not "permanently partially disabled" as defined under the AWCA. See Id. at § 2(34).

¶6 Obviously, this ambiguity has numerous unintended consequences. For instance, the remaining provisions of section 45(C) contemplate compensating an employee for a "permanent partial disability . . . as defined in this act." Id. at § 45(C)1. Again, the Act narrowly defines "PPD" as an employee's inability to resume his or her pre-injury or equivalent job. Id. at § 2(34). And, subsection 4 prescribes the computation for compensation only "in cases of permanent partial disability . . . ."[3] But, because section 2(34) continues to limit a PPD determination to only those employees who are "prevent[ed] . . . from returning to his or her pre-injury or equivalent job" regardless of impairment, an employer may successfully defend against an employee's claim for a PPD award when the injured employee has resumed his or her pre-injury or equivalent job. That unintended consequence is no different than the deprivation an employee suffered when the unconstitutional deferral provision was applied to his or her claim.

¶7 As I have previously stated, the provisions of the AWCA, like its predecessor, are clearly interrelated. The above-referenced provisions are merely a glimpse of the parade of horribles the majority creates in its piecemeal approach in remedying the AWCA's unconstitutional provisions. If one provision is constitutionally offensive, so too are its interrelated provisions.

¶8 I would therefore amend the majority's opinion to read: "And to the extent that any other provision of the AWCA, as applied, reinstates the concept of fault into a no-fault system and is inconsistent with the views expressed today, those offensive provisions must be declared unconstitutional." Further, just as the majority strikes sections 45(C)(5)(a-e) as constitutionally infirm, I would similarly strike sections 2(16) and the offending portions of (34)[4] as those provisions are interrelated.[5] Anything short of those amendments renders today's pronouncement an illusory victory for claimants who find themselves permanently partially impaired should they resume their pre-injury or equivalent jobs.

Newly Proposed Section 34:

"Permanent partial disability" means a permanent disability or loss of use after maximum medical improvement has been reached which prevents the injured employee, who [and the employee] has been released to return to work by the treating physician, from returning to his or her pre-injury or equivalent job. All evaluations of permanent partial disability must be supported by objective findings.

FOOTNOTES

[1] It should be noted that the term "impairment" originates from the American Medical Association guides.

[2] The AWCA now defines "disability" as the incapacity because of compensable injury to earn, in the same or any other employment, substantially the same amount of wages the employee was receiving at the time of the compensable injury. Id. at § 2(16). The phrase "the same or any other employment" is defined further in § 2(37) and states, a "pre-injury or equivalent job" means the job that the claimant was working for the employer at the time the injury occurred or any other employment offered by the claimant's employer that pays at least one hundred percent (100%) of the employee's average weekly wage. The AWCA goes on to limit a "permanent partial disability" to a permanent disability or loss of use after maximum medical improvement has been reached which prevents the injured employee, who has been released to return to work by the treating physician, from returning to his or her pre-injury or equivalent job. All evaluations of permanent partial disability must be supported by objective findings. Id. at § 2(34).

[3] "[T]he compensation shall be seventy percent (70%) of the employee's average weekly wage, not to exceed Three Hundred Twenty-three Dollars ($323.00) per week, for a term not to exceed a total of three hundred fifty (350) weeks for the body as a whole."

[4] See Conaghan v. Riverfield Country Day Sch., 2007 OK 60 (where this Court previously struck constitutionally infirm provisions while leaving the remaining provisions intact).

[5] Striking section 2(16) would not create an additional ambiguity and is arguably superfluous. The remaining provision, section 2(33) "permanent disability" is applicable to both PTD and PPD determinations after an employee has reached MMI. That section defines "permanent disability" as the extent, expressed as a percentage, of the loss of a portion of the total physiological capabilities of the human body as established by competent medical evidence and based on the current edition of the American Medical Association guides to the evaluation of impairment, if the impairment is contained therein.

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 59, 831 P.2d 1379, 63 OBJ 1377, Special Indem. Fund v. Figgins
Discussed at Length
 1953 OK 84, 255 P.2d 504, 208 Okla 265, FORD v. NELLIE B. MINING CO.
Cited
 1953 OK 150, 257 P.2d 510, 208 Okla 461, CARPENTER ELECTRIC CO. v. DRENNAN
Cited
 2001 OK 73, 44 P.3d 547, 72 OBJ 2712, GRAY v. NATKIN CONTRACTING
Discussed
 1920 OK 117, 188 P. 658, 77 Okla. 316, BRISTOW COTTON OIL CO. v. STATE INDUS. COMM'N
Discussed
 1995 OK 44, 895 P.2d 719, 66 OBJ 1579, Farm Fresh, Inc. v. Bucek
Discussed at Length
 1974 OK 38, 520 P.2d 809, WOLFENBARGER v. HENNESSEE
Discussed at Length
 2003 OK 91, 84 P.3d 99, BRENNEN v. ASTON, Jr.
Discussed
 2004 OK 71, 102 P.3d 660, TUCKER v. ADG, INC.
Discussed
 2005 OK 27, 130 P.3d 213, YOCUM v. GREENBRIAR NURSING HOME
Discussed at Length
 2007 OK 6, 154 P.3d 1257, SCRUGGS v. EDWARDS
Discussed
 2007 OK 60, 163 P.3d 557, CONAGHAN v. RIVERFIELD COUNTRY DAY SCHOOL
Cited
 2008 OK 65, 188 P.3d 177, GLASCO v. STATE ex rel. OKLAHOMA DEPARTMENT OF CORRECTIONS
Discussed
 2009 OK 61, 222 P.3d 1058, STATE ex rel. PROTECTIVE HEALTH SERVICES STATE DEPT. OF HEALTH v. VAUGHN
Discussed
 2011 OK 22, 251 P.3d 741, DAFFIN v. STATE ex rel. OKLAHOMA DEPT. OF MINES
Discussed at Length
 2011 OK 81, 264 P.3d 1190, EVANS & ASSOC. UTILITY SERVICES v. ESPINOSA
Discussed
 2011 OK 86, 270 P.3d 133, BOWEN v. STATE ex rel. OKLAHOMA REAL ESTATE APPRAISER BOARD
Discussed
 1975 OK 96, 537 P.2d 1211, CITY OF EDMOND v. WAKEFIELD
Discussed
 2015 OK 35, 357 P.3d 470, CROWNOVER v. KEEL
Discussed at Length
 2016 OK 20, TORRES v. SEABOARD FOODS, LLC
Discussed at Length
 2000 OK 41, 5 P.3d 594, 71 OBJ 1292, Grant v. Goodyear Tire & Rubber Co.
Discussed at Length
 1981 OK 114, 634 P.2d 1308, B. F. Goodrich v. Hilton
Discussed
 1983 OK 30, 661 P.2d 892, Wood v. Independent School Dist. No. 141 of Pottawatomie County
Discussed
Title 85. Workers' Compensation
 Cite
Name
Level

 85 O.S. 301, Repealed by Laws 2013, SB 1062, c. 208, § 171, eff. February 1, 2014
Cited
 85 O.S. 333, Repealed by Laws 2013, SB 1062, c. 208, § 171, eff. February 1, 2014
Discussed
 85 O.S. 3, Repealed by Laws 2011, SB 878, c. 318, § 87
Discussed at Length
 85 O.S. 22, Repealed by Laws 2011, SB 878, c. 318, § 87
Cited
 85 O.S. 41.1, Repealed by Laws 2011, SB 878, c. 318, § 87
Cited
Title 85A. Workers' Compensation
 Cite
Name
Level

 85A O.S. 2, Definitions
Discussed at Length
 85A O.S. 4, Invalidity Clause
Cited
 85A O.S. 5, Exclusivity
Cited
 85A O.S. 10, Limitation on Release, Assignment, Garnishment, etc. of Workers' Compensation Benefit - Exceptions
Cited
 85A O.S. 12, Compensation Preference
Cited
 85A O.S. 22, Workers' Compensation Commission - Administration - Employees - Powers - Duties
Cited
 85A O.S. 35, Employer - Duty to Compensate - Limitation - Primary Obligation
Cited
 85A O.S. 45, Compensation Rates - Temporary Total Disability - Temporary Partial Disability - Permanent Partial Disability - Permanent Total Disability - Vocational Rehabilitation - Disfigurement
Discussed at Length
 85A O.S. 46, Permanent Partial Disability Compensation - Amputation - Loss of Vision - Loss of Hearing
Discussed at Length
 85A O.S. 72, Workers' Compensation Commission - Proceedings - Conduct - Public - Records - Introduction of Evidence - Expert Testimony
Cited
 85A O.S. 78, Workers' Compensation Commission - Appeal to Commission - Appeal to Supreme Court
Cited